### STATE v. CHILES.

1. HOMICIDE—INDICTMENT—CAUSE OF DEATH.—Proof that deceased died from a severe whipping administered by defendant sustains an indictment which charges that the prisoner did strike and beat the deceased with switches and sticks, giving to the said deceased on her body one mortal wound of which she died.

2. EVIDENCE—PHYSICIAN—FACTS OF CASE.—The attending physician, called as an expert, may testify that a whipping received by deceased was the cause of her death from resultant pneumonia, though he based his opinion in part upon information, given to him by the defendant when he made his diagnosis, that the deceased had been, prior to the whipping, in ordinary health, going about doing her work.

3. IBID.—REPLY.—A physician, testifying on cross-examination that he had never seen another case where pneumonia was caused by a whipping, may be asked in reply whether he had ever before seen a case where there had been such a whipping.

4. HOMICIDE—INDICTMENT—CAUSE OF DEATH—CHARGING JURY.—The judge charged the jury that the defendant should be convicted of murder or manslaughter, as the case might be, if the jury were satisfied beyond a reasonable doubt that the deceased died of pneumonia, which resulted from a whipping inflicted by defendant, or the death was hastened by the whipping. *Held,* that there was no error in this instruction, even though the indictment charged that deceased died of "one mortal wound," and did not charge that her death had been accelerated by defendant.

5. IBID.—REFUSAL OF NEW TRIAL—APPEAL.—The refusal by the trial judge of a new trial, moved for in a criminal case on the ground of insufficiency of evidence, cannot be reviewed on appeal.

Before WATTS, J., Abbeville, October, 1894.

Indictment against Allen Chiles for the murder of his wife in July, 1894. He was convicted of manslaughter and appealed.

*Messrs. Graydon & Graydon,* for appellant.

*Mr. M. F. Ansel,* solicitor, contra.

July 5, 1895. The opinion of the court was delivered by

MR. JUSTICE POPE. The appellant was convicted of manslaughter by the jury at a trial had in the Court of General Sessions for Abbeville County, in this State, at the October, 1894, term thereof, and after his honor, Judge Watts, had sentenced him to punishment by confinement in the State Penitentiary for seven years, he appealed therefrom to this court. We will now dispose of the five grounds of appeal.

The fifth ground of appeal imputes error to his honor, the presiding judge, "in charging the jury that they might find the defendant guilty of murder or manslaughter, when there was a total failure of proof of the allegation of the indictment that the death of the deceased was caused by one mortal wound inflicted by the defendant." The appellant, in effect, assails the indictment as fatally defective, in that the instrument charges that the accused inflicted upon the body of the deceased one mortal wound, of which mortal wound the deceased died, whereas under the testimony in the case it appears that the accused had inflicted many wounds. Here is the indictment, omitting the formal parts: "That Allen Chiles, on the 13th day of July, in the year of our Lord one thousand eight hundred and ninety-four, with force and arms, at Abbeville Court House, in the county of Abbeville and State of South Carolina, in and upon one Margaret Chiles, feloniously, willfully, and of his malice aforethought, did make an assault, and that the said Allen Chiles her, the said Margaret Chiles,

then and there feloniously, willfully, and of his malice afore-
thought, with switches and sticks did strike and beat and
wound, giving to the said Margaret Chiles thereby in and upon
the body of the said Margaret Chiles one mortal wound, of
which mortal wound the said Margaret Chiles then and there,
on the 5th day of September, A. D. 1894, died, and so the
jurors aforesaid," &c.

The testimony all tended to establish the fact that Allen
Chiles did administer to his wife, on the 13th day of July, 1894,
a whipping, using sycamore switches, from which she was
bruised from head to foot, in some cases cutting through the
skin, and in other cases merely bruising the skin, and that this
whipping caused the poor woman such intense suffering, that
the creature, called a man and her husband, himself went for
a physician, who prescribed calomel and administered an ano-
dyne, and on the Wednesday afterwards pneumonia ensued.
Do the allegations in the indictment answer the demands of the
law when a man is arraigned for crime? The late Chief Justice
O'Neall, in the case of *State* v. *Schroder*, 3 Hill, 65, laid down
the rule for testing the sufficiency of an indictment thus: "The
general rule in framing an indictment is, that the offence should
be so described that the defendant may know how to answer it,
the court what judgment to pronounce, and that a conviction
or acquittal on it may be pleaded in bar to any subsequent or
other indictment for the same offence." This court, in the
case of *State* v. *Shirer*, 20 S. C., 408, recognized the rule laid
down in *State* v. *Schroder, supra,* as "a guide." But the General
Assembly of this State. in 1887, by the 5th section of an act
entitled "An act to regulate criminal practice in the Courts of
General Sessions in this State" (19 Stat., 830), provided: "That
every indictment for murder shall be deemed and adjudged
sufficient and good in law, which, in addition to setting forth
the time and place, together with a plain statement, divested
of all useless phraseology, of the manner in which the death of
the deceased was caused, charges that the defendant did felo-
neously, willfully, and of his malice aforethought, kill and
murder the deceased." It seems to us that the indictment
here preferred answers all of these requirements, and that it

sufficiently apprised the defendant of what he was to answer.
It can make no difference that the bruises on the body are de-
scribed as a "wound," from which the deceased died.    This
being so, there was no error in the Circuit Judge in his charge,
as here complained of.

Having disposed of this objection to the indictment, we are
now logically led to the consideration of the objections to the
competency of certain testimony as found in the first and second
grounds of appeal.    The appellant's first ground of appeal is as
follows: His honor erred "in allowing the solicitor to
ask, and the witness, Dr. H. Brennan, to answer the fol-
lowing questions, notwithstanding the objections of the
defendant, the questions and answers being as follows: 'Q.
What brought on the pneumonia?    What was the cause of the
pneumonia?    A.  Well, the history of the case goes very much
into the diagnosis.    Previous to that day of the whipping, she
was in ordinary health, going about doing her work, and after
that time she was not able to do anything, and the immediate
cause of the pneumonia was the result of this exposure and
whipping.    Q.  Go on.    A.  I say that the pneumonia was the
result of this inordinate whipping.    But I want to say that I
believe that this whipping was the immediate cause of the
pneumonia.' "    It is well to bear in mind that the defendant
himself called on Dr. Brennan to visit his wife as a physician.
It was the defendant who told Dr. Brennan that he himself had
flogged his wife with sycamore switches to the extent of twenty
or twenty-five lashes, and it was to the defendant, just after
Dr. Brennan had completed the examination of the wife, who
is now deceased, that the doctor remarked, "that they were
pretty heavy licks."    All this occurred on the Sunday succeed-
ing the whipping, which occurred a day or two before the
doctor made the examination.

In order that a physician may correctly diagnose a case to
which he is called, it is almost a necessity that he should learn
the previous state of health of the patient.    Dr. Brennan testi-
fies that to his inquiries in this direction, he was informed that
before she was beaten, the wife was able to go about and attend
to her usual duties, but that on the Sunday he saw the patient

she was not able to do so. Thereupon, as a physician, he determined that this severe beating was the cause of this change in the patient. On Wednesday after the Sunday he first examined her, she came to him and he discovered that she had pneumonia. She died on the 5th day of September, 1894. Therefore, when he was called upon at the trial, as an expert, to testify in his medical opinion what caused her death, it was necessary and proper that he should testify as to the facts of his diagnosis of her case both on the Sunday he first saw her and on the Wednesday after. In the light of these matters surrounding this witness, we do not think the Circuit Judge erred in admitting this testimony. In so holding, we do not think there is the slightest departure from the ordinary rule that an expert ought not to be allowed to testify as to facts outside of his own knowledge. This witness merely reproduced to the court and jury what circumstances entered in to make up his diagnosis of the woman's condition on the two days he saw her after she had been beaten. He then declared it to be his opinion as a medical expert that the death of the woman was the result of the pneumonia which had been caused by the defendant's beating. This ground of appeal must be dismissed.

Appellant's second ground of appeal imputes error to the Circuit Judge in allowing the solicitor to ask, and the witness, Dr. Brennan, to answer the following questions, notwithstanding the objections of defendant, the questions and answers being as follows: "Q. Have you ever in all your experience as a physician seen a case where there was as much whipping as in this case? Have you ever seen such a case? A. I never have." When the witness was under the cross-examination of defendant's counsel, he was interrogated as to whipping his son, and was asked if the whipping brought on pneumonia. He was asked generally if in all his practice apart from this case, he had ever known a whipping to bring on pneumonia. So when the solicitor handled this witness in reply, he asked the two questions complained of. They were strictly in reply to the defendant's examination of this State's witness, and were competent. This ground of appeal must be dismissed.

We come now, logically, to consider the ground of appeal which imputes error to the Circuit Judge in his charge to the jury. It is alleged that he erred in charging: "If the testimony here satisfies you beyond a reasonable doubt that this woman died of pneumonia, and that that pneumonia resulted from that whipping given her by the defendant, and you are so satisfied beyond a reasonable doubt, why you can find him guilty of murder or manslaughter as you may see fit. But you must be satisfied beyond a reasonable doubt that her death resulted in consequence of that whipping. I charge you also that if this woman's death was hastened by that whipping, and you believe that beyond a reasonable doubt, you could find the defendant guilty of manslaughter."[1] We have examined the entire charge of the Circuit Judge, and are pleased to say that he evinced the utmost care in defining each grade of homicide, pointing out distinctly the characteristics of each grade—warning the jury at intervals of its being the duty of the State to prove the offence beyond a reasonable doubt, and also of their duty to acquit the defendant, if the State failed to prove defendant's guilt of either the crime of murder or that of manslaughter, beyond a reasonable doubt in each instance. Now the extract from the charge embodied in this ground of appeal is based upon sound law, especially in view of the .wholesome definitions of the crimes of murder and manslaughter contained in the general charge of the judge. Let this ground of appeal be overruled.

Lastly, the appellant appeals because the Circuit Judge overruled the defendant's motion for a new trial, "when there was no testimony whatsoever that the deceased died from a wound, as alleged in the indictment, and when the evidence plainly showed that the wounds from the whipping

[1] Appellant's counsel, in their argument on appeal, alleged that there was error in this charge *because*, "as the indictment charged that the death was caused by one mortal wound, he [the judge] should have confined the jury to a consideration of that question, and that alone." And, further, *because* "there was no evidence that the deceased's death was hastened by the defendant, and there is no allegation in the indictment that her death was accelerated by the defendant."

had all disappeared, without leaving even a scar, before her death, and that she died nearly two months after the whipping, not of one mortal wound, as alleged in the indictment, but of pneumonia or consumption, which did not set in until four days after the whipping, and with which the whipping did not have any necessary, direct, and causal connection." Ever since *State* v. *Cardoza*, 11 S. C., 195, this court has continuously held that this court cannot set aside the verdict of the jury on the ground that it was not sustained by facts proved, nor will it interfere with the refusal of the Circuit Judge to grant a new trial, unless some error of law was committed by him in making known his refusal. In the appeal at bar, there is nothing but alleged insufficiency in the testimony. This ground of appeal must also be overruled.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.