QUERTERMOUS v. STATE.

Opinion delivered March 14, 1910.

1. FORGERY—SUFFICIENCY OF INDICTMENT.—An indictment for forgery of the books of a banking corporation, under Kirby's Digest, § 1726, which alleges that defendant was cashier of the Bank of Humphrey, "a corporation organized and incorporated under the laws of the

.State," and that he did feloniously, etc., alter and change "the books of accounts of said bank kept by said corporation," sufficiently charges that the bank is a corporation.   (Page 51.)

2.  SAME—CONSTRUCTION OF STATUTE.—Kirby's Digest, § 1726, providing that "every person who, with the intent to defraud, *shall make any false entry* or *shall falsely alter* any entry made in any book of accounts by any banking corporation  \*  \*  \*  by which any pecuniary obligation, claim or credit shall be, or purport to be, discharged, diminished, increased, created or in any manner affected, shall, on conviction thereof, be punished as for forgery," does not define two offenses or two modes in which the offense may be committed.   (Page 52.)

3.  SAME—INDICTMENT.—An allegation, in an indictment for falsely altering the books of a bank, that a customer had deposited money in the bank and that defendant feloniously and unlawfully altered the books of said bank, with the intent to defraud such customer, "in such a way and manner as to diminish and make said account to appear as same had been discharged," was equivalent to a direct allegation that the credit of the customer had not in fact been diminished or discharged.   (Page 54.)

4.  SAME—SUFFICIENCY OF EVIDENCE.—Where the cashier of a bank conveyed his own real estate to a depositor of the bank for the purpose of securing his deposit, but without any agreement that such land should be accepted in lieu of such deposit, and thereafter, without authority from such depositor, transferred the latter's deposit credit to his own account, a finding of the jury that such change was made with fraudulent intent to alter the depositor's account will be sustained.   (Page 54.)

5.  APPEAL AND ERROR—WHEN INSTRUCTION HARMLESS.—Where, in a prosecution of a bank cashier for fraudulently altering the accounts of a depositor with the bank, there was no contention by either side that defendant made a complete settlement of the depositor's claim against the bank, an instruction that "it is no defense that the defendant has made *complete* or partial settlement of the indebtedness shown by account, if any," was not prejudicial.   (Page 59.)

6.  INSTRUCTION—SINGLING OUT ONE CIRCUMSTANCE.—While it is not necessarily error to give an instruction which singles out one circumstance and directs the jury's attention to it without reference to other circumstances in the case, it is better practice not to give an instruction in that form, and a case will not be reversed on account of the failure to give such an instruction.   (Page 59.)

7.  FORGERY—EVIDENCE.—It was proper, in a prosecution of a bank cashier for falsely altering the account of a depositor in the bank, to permit the prosecution to prove the state of defendant's account with the bank and his indebtedness to the bank.   (Page 60.)

8.  APPEAL AND ERROR—REHEARING—NEW MATTER.—The rule that matters not raised by counsel in their brief on the submission of a case will

not be considered on a petition for rehearing does not apply in felony cases.   (Page 60.)

9.   CRIMINAL LAW—SUFFICIENCY OF INDICTMENT.—Nothing can be taken by intendment or by way of recital to supply the want of certainty in an indictment.   (Page 61.)

10.   FORGERY—SUFFICIENCY OF INDICTMENT.—An indictment, under Kirby's Digest, § 1726, which alleges that defendant "did feloniously and unlawfully alter and change," etc., "the books of account of said bank, kept by said corporation, said alteration and change having been made feloniously and unlawfully in said book accounts aforesaid," and that said felonious, fraudulent alterations and changes aforesaid were made in such a way and manner as to diminish and make said account to appear as same had been discharged," etc., is defective in failing to allege that the alterations or changes were made falsely.   (Page 61.)

Appeal from Arkansas Circuit Court; *Eugene Lankford,* Judge; affirmed.

*W. N. Carpenter* and *Wiley & Clayton,* for appellant.

1.   The indictment is bad for uncertainty and for failure to charge an offense.   Kirby's Digest, § 1726; 80 Ark. 310. The statute must be strictly construed, and in order to make out a charge under it the language must state facts within its terms. 84 Ark. 136.   Every material fact necessary to constitute an offense must be stated with reasonable distinctness and precision. 12 Ark. 608; 29 Ark. 68; 38 Ark. 519; 43 Ark. 93; 47 Ark. 575; 80 Ark. 310.   The charge that accused "falsely" swore to certain facts is insufficient; there must be a charge that they were untrue with particulars.   54 Ark. 584-6; 59 Ark. 113-119; 153 U. S. 584.   Statutory words alone are not sufficient.   68 Ark. 251; 73 Ark. 139; 105 U. S. 613; 153 U. S. 584.

2.   It is not alleged that the bank was a banking corporation, and the verdict is contrary to the evidence.

*Hal L. Norwood,* Attorney General, and *Wm. H. Rector,* Assistant, for appellee.

1.   The indictment is sufficient.   The statute defines two offenses in the same transaction, but only one crime.   34 Fed. Rep. 30.   It is sufficient to charge the offense with such a degree of certainty as to enable the court to pronounce judgment on

conviction, etc.  Kirby's Digest, § 2228-9, 2241-3; 84 Ark. 487; 63 Ark. 613; 93 Ark. 406; 5 Ark. 444.; 19 Ark. 613.

2.  The offense was punishable at common law.  94 Pa. St. 85; 75 Am. Dec. 568; 57 Miss. 793.

McCULLOCH, C. J.  Defendant, Frank Quertermous, was indicted by the grand jury of Arkansas County under the following statute: "Every person who, with the intent to defraud, shall make any false entry or shall falsely alter any entry made in any book of accounts by any banking corporation within this State, or in any book kept by such corporation or its officers, by which any pecuniary obligation, claim or credit shall be, or purport to be, discharged, diminished, increased, created or in any manner affected, shall, on conviction therof, be punished as for forgery."  Kirby's Dig., § 1726.

The indictment is as follows: "The grand jury of Arkansas County, in the name and by the authority of the State of Arkansas, accuse Frank Quertermous of the crime of falsely altering bank book accounts, committed as follows, towit:  The said Frank Quertermous, in the county and State aforesaid, on the thirteenth day of July, A. D. 1908, then and there being over sixteen years, and being the cashier of the Bank of Humphrey, a corporation organized and incorporated under the laws of the State of Arkansas, and doing business at Humphrey, Arkansas County, Arkansas, and having in his possession, and having come into his possession as said cashier aforesaid, the sum of two thousand, two hundred and seventy-two dollars and twenty-nine cents, of gold, silver and United States currency, a more particular description to the grand jury unknown; said money being the personal property of the common school fund of Arkansas County, Arkansas, and the said money having been deposited by Joseph Ireland, the duly acting and qualified treasurer of said county, for safekeeping, and the said sum of money having been entered on the books of accounts to the credit of Joseph Ireland, treasurer aforesaid; he, the said Frank Quertermous, as cashier aforesaid, and having in his custody the book accounts of said bank containing the account of the said Joseph Ireland's deposit, as aforesaid, of said money aforesaid, did feloniously and unlawfully alter and change, with the intent to defraud the said Joseph Ireland and his bondsmen and the common school fund of Arkansas County, Arkansas, the books

of accounts of said bank kept by said corporation, said alteration and change having been made feloniously and unlawfully
in said book accounts aforesaid by the said Frank Quertermous;
said felonious, fraudulent changes and alterations aforesaid in
said books aforesaid were made in such a way and manner
as to diminish and make said account to appear as same had
been discharged, against the peace and dignity of the State of
Arkansas."

Defendant demurred to the indictment on the following
grounds: First, that the indictment charges more than one offense; second, that the indictment is uncertain in its allegations as to the offense charged; third, that the facts set forth
do not constitute a public offense. In support of the third
ground of demurrer, which we will dispose of first, it is contended that the indictment fails to state that the Bank of Humphrey was a banking corporation, and on account of this omission no public offense is charged. We are of the opinion, however, that, construing the language of the indictment in its
usual acceptation, in accordance with the liberal policy of our
statute, it does allege that the Bank of Humphrey was a banking corporation. *State* v. *Peyton,* 93 Ark. 406; *Harding* v. *State,*
94 Ark. 65.

It alleges that defendant was "the cashier of the Bank of
Humphrey, a corporation organized and incorporated under the
laws of the State of Arkansas, and doing business at Humphrey, Arkansas County, Arkansas;" that, "as cashier aforesaid, and having in his custody the book accounts of said bank,"
etc., he did feloniously, etc., alter and change "the books of accounts of said bank kept by said corporation." This language
leaves no escape from the conclusion that the Bank of Humphrey is alleged to be a banking corporation. The case of
*Gage* v. *State,* 67 Ark. 308, is relied on by counsel for defendant
in support of their contention, but we think the descriptive
language in the present indictment is more definite than in the
Gage case, and we are not disposed to further extend the rule
announced in that case.

The determination of the question presented by the other
two grounds for demurrer calls for an analysis of the statute
under which the indictment is preferred. The gravamen of
the offense is the falsification of the books of accounts or any

book kept by a banking corporation by which "any pecuniary obligation, claim or credit shall be, or purport to be, discharged, diminished, increased, created or in any manner affected." The statute does not prescribe two offenses. Nor does the statute prescribe two modes in which the offense may be committed, for the false alteration of an entry in the books, by erasure and substitution, or otherwise, which works a change in the accounts, necessarily constitutes a false entry in effect. An entry can not be altered without the act resulting in a new entry, so the expression in the statute "falsely alter any entry" is embraced in the other expression, "make any false entry," and either or both of these expressions may properly be employed in an indictment. Proof of the making of a new false entry which purports to discharge, diminish, increase or otherwise affect an obligation, claim or credit is sufficient to support a charge of false alteration of an entry in a book of accounts, and proof of a false alteration, by erasure or otherwise, of an entry previously made is sufficient to support a charge of making a false entry.

The only authority bearing directly on the question which has been brought to our attention, or which we can discover in the books, is an opinion by the late Judge Thayer construing a statute of the United States which makes it a misdemeanor for an officer or agent of any national bank to make any false entry in any book, report or statement belonging to the bank. He said: "When a person makes an entry in books of account, the act may involve, and oftentimes does involve, an alteration of an entry previously made; but the act does not lose its character on that account. An entry is made, notwithstanding the fact that a previous entry is altered. Adopting the definition before stated of the words 'entry' and 'false entry,' it appears to me that a person makes a false entry, within the meaning of the statute, who erases one or more figures from a number already written in a book of account, and writes other figures in lieu thereof, so that the fact intended to be recorded is falsified. I can see no substantial difference between erasing certain figures of a number and writing different ones in their place, and making an entry every part of which is in the writer's handwriting. The act in question, as I conceive, may be correctly termed either the alteration of an entry or the making of an

entry. It may appropriately be said of such an act that an 'entry has been made' rather than 'altered,' because a new number is the result of the act, and for the reason that a new record is created which bears different testimony as to the fact or transaction intended to be authenticated. If attention is paid to the purpose which underlies the law under which the indictment is framed, there is ample ground to base an inference that the construction above given is in accordance with the legislative intent. The statute was obviously enacted to prevent bank officials and employees from concealing the actual financial condition of national banking associations by means of a falsification of any of the books of account or statements or reports which they are by law required to make."

It is also contended that the indictment is fatally defective in not alleging that the credit on the account of Ireland had not in fact been diminished or discharged according to the purport of the entry. The allegation that there was a deposit of the sum of money named by said Ireland, and an entry therof on the books of the bank, and that said entry had been falsely altered and changed so as to purport to diminish and discharge the credit, was equivalent to a direct allegation that the credit had not in fact been diminished or discharged. Otherwise the alteration would not have been a false one.

Our conclusion is that the indictment was sufficient, and that the demurrer was properly overruled.

The following are the facts proved at the trial. Defendant was cashier of the Bank of Humphrey, a corporation engaged in the banking business at Humphrey, Arkansas County, Arkansas. J. M. Ireland was treasurer of Arkansas County, and deposited some of the county funds in said bank. On July 13, 1908, there was a balance of $2,272.29 of said public fund in the bank standing as a credit on the books in the name of Ireland as county treasurer. The bank was then hopelessly insolvent, and had ceased to transact business several days prior to that time, though no insolvency proceedings had been begun. It does not appear when the bank became insolvent, but it was known to be so as early as June, 1908. On June 11, 1908, the defendant caused his wife to convey to Ireland some lots in the town of Humphrey on which several buildings were situated. The conveyance was in absolute form, reciting a cash

consideration of $2,000, but it was in fact executed as security for Ireland's deposit in the bank, and the latter gave defendant a writing showing that any surplus realized from the sale of the property over and above the deposit was to be returned to defendant. There was then an outstanding mortgage lien of $1,000 on the property. In April, 1909, Ireland sold the property for $3,000, which amount, after deducting the expenses and discharging said .prior mortgage lien, netted him the sum of $1,541, as a credit on the amount due him on his bank deposit, and left a balance of $731.29 still due him. This had never been paid at the time of the trial. All of the witnesses who testified on the subject fixed the fair market value of the property conveyed to Ireland at $4,000 or more at the time of the conveyance.

Defendant tendered his resignation early in July, 1908, and J. M. Acklin was elected as his successor; but the latter did not assume charge as cashier till July 13, defendant remaining in charge of the books and retaining the keys to the building, etc. The doors of the bank were closed on July 6, and the transaction of business ceased; but a meeting of the directors was held in the office of the bank on July 13, and some time during that meeting, by direction of defendant, the account of Ireland as treasurer was charged with $2,272.29, thus balancing that account and extinguishing the credit, and a like amount was credited to the account of defendant. These changes in the account were made without Ireland's knowledge or consent, and must therefore be treated as false entries, for the effect of making them was to purport to discharge the credit standing in Ireland's name on the books of the bank for his deposits. At that time there was a balance of $873.24 standing to the credit of defendant on the books, which was augmented by the credit of the Ireland balance; but he owed the bank several stock notes, aggregating the sum of $4,004.06. The authorized capital stock of the bank was $25,000, all of which had been subscribed, but only $1,000 had been actually paid, the remainder being evidenced by the notes of the stockholders.

There is a conflict in the testimony concerning the above-named entries changing the Ireland account. Defendant denies that he made or authorized the entries, and says that the same was done by some one else upon instructions of the directors,

who did this on the theory that defendant had conveyed property sufficient in value to discharge the Ireland deposit, and was entitled to have a credit on the books to that extent. There is testimony to the effect that the entries were made by the assistant cashier upon defendant's instructions, but that the directors consented to the change when defendant claimed the right to have the Ireland deposit placed to his credit. The jury found against defendant, and it must be treated as settled by the verdict that he caused the false entries to be made, purporting to discharge Ireland's credit on the books of the bank without the latter's knowledge or consent. It is immaterial, so far as the guilt or innocence of defendant is concerned, whether or not the directors consented to the change of the account.

It is earnestly insisted by counsel, however, that there is no evidence of any intent on defendant's part to defraud Ireland by making the entries. They contend that, as all the witnesses testify that the fair market value of the property conveyed to Ireland, after deducting the prior mortgage debt, exceeded the amount of his credit on the books of the bank, the evidence on the point is undisputed, and that no fraudulent intent on defendant's part could have existed under those circumstances.

It does seem to us improbable that, after defendant had voluntarily caused his wife to convey to Ireland property of sufficient value apparently, and which the witnesses say was in fact of sufficient value, to discharge the debt, he had any intent to defraud Ireland in transferring the deposit credit from Ireland's account to his own. But we cannot say that .the jury were wholly unwarranted by the evidence in finding the existence of an intent to defraud. Ireland's credit was not discharged by the conveyance of the property, and defendant's own admissions show that he did not so understand it. The bank still owed Ireland as treasurer a balance on his deposit of public funds, and it stood to his credit on the books of the bank. His remedy against the bank for the recovery of the amount, and whatever remedies he may have had to require payment of the stock notes, including those of defendant, were not impaired by acceptance of the conveyance from appellant's wife; but the false entries purported to discharge his credits on the books of the bank, and thus purported to cut off any other remedy he may have had for the collection of his debt. Though the

property conveyed appeared to be sufficient in value to fully satisfy Ireland's claim, he did not accept the conveyance in satisfaction, and it was necessarily a matter of some speculation whether or not the sale of the property would satisfy it. Defendant had no right to treat the conveyance as a satisfaction of the claim when it had not in fact been accepted as such, and to assume the authority of transferring to his own account the credit of Ireland on the books of the bank without the latter's consent. It was within the province of the jury to find, from all the circumstances, that the transfer was made by defendant with intent to defraud Ireland. There being evidence from which the jury could find the existence of an intent to defraud, it is not within our province to disturb the verdict.

The case was submitted to the jury on the following instructions given at the request of counsel for the State:

"1. If you find from the evidence that the defendant was cashier of the Bank of Humphrey, or assumed to act as such cashier, and that the book of acounts of said bank showed a true credit to the account of Joseph Ireland as treasurer, and that the defendant, in Arkansas County, within three years next before the finding of this indictment, and on or before the 13th day of July, 1908, the defendant procured or caused said account to be altered, or changed, so that he should have credit for same, and that the account of said Ireland as treasurer should be diminished or closed thereby, and that said alteration or change was false and made with the intent to defraud Joseph Ireland as treasurer, or the common school fund of Arkansas County, or the bondsmen of the said Joseph Ireland as treasurer, you will find the defendant guilty.

"2. It is not necessary that the defendant should have himself falsely changed the account. He would be guilty if he procured or caused it to be done with the intent to defraud the said Joseph Ireland as treasurer, or his bondsmen, or the common school fund of Arkansas County.

"3. It is no defense that the defendant has made complete or partial settlement of the indebtedness shown by the account, if any. Evidence of such action on his part will only be considered by you in determining the motive of defendant in procuring or causing the account to be altered, if he did procure it to be done. And, even though you may believe that the

defendant settled or secured the indebtedness, if any, either wholly or in part, yet if, at the time he caused or procured the alteration to be made (if you find that he caused or procured it), he had the intent to defraud the said Joseph Ireland as treasurer, or his bondsmen, or the common school fund of Arkansas County, and, if said alteration was false, you will convict him.

"4. You are instructed that in determining the intent of the defendant in causing the alteration to be made, if you find that the defendant caused such change in the account or procured it to be done, you may consider the state of the defendant's individual account with said bank and his indebtedness, if he was indebted, along with all the other facts and circumstances in the case.

"5. You are instructed that the fact that others than the defendant may have consented to, or acquiesced in, or assisted in, said alteration or change of said account is no defense. Even though others may have consented to, or acquiesced in, or assisted in, changing said account, if you find that said account was changed, if the defendant caused or procured said account to be changed, and said change was false and made with intent to defraud the said Ireland as treasurer, or his bondsmen, or the common school fund of Arkansas County, it is your duty to convict the defendant."

The court also gave the following instructions at the request of defendant:

"2. You cannot convict the defendant unless the State has proved beyond a reasonable doubt that the entry was made with the intent to defraud; and if you find that the entry, even though illegally made, was with an innocent purpose or made under a mistaken idea of the proper method of making the books show the facts, your verdict should be for the defendant.

"6. If you believe from the testimony that the board of directors of the Bank of Humphrey considered the matter of Ireland's account at the time the entry complained of was made, and then decided that the defendant had assumed the Ireland account and secured it, it was proper, as between the said bank and the defendant, that said bank should be relieved of the payment of the Ireland account; and if you believe that the entry complained of was made to effect that purpose, and with no

intent to defraud, even though it was not the proper entry to make for that purpose, the entry would not justify a conviction in this case."

The third instruction given at the request of the State is objected to on the alleged ground that it misleads the jury in saying that a complete settlement of the indebtedness, even before the alleged alteration, would not be any defense. It was inaccurate to refer in the instruction to a complete settlement, for it is not contended, either on the part of the prosecution or by the defendant, that any complete settlement was ever made. Defendant does not contend that he conveyed the land to Ireland in satisfaction of his claim, but admits that it was only given as security. It is not possible that any harmful effect to defendant's rights could have resulted from this instruction.

The fifth instruction is objected to on the alleged ground that the jury might have understood from it that, if the directors consented to the change in the accounts, and did so with the intent to defraud Ireland, the defendant would be guilty, even though he had no such fraudulent intent. We cannot see that this instruction is at all open to that construction, or that the jury could have been misled by it. All the instructions given by the court conveyed the idea that before defendant could be convicted it must be found that he caused the false alteration to be made with the intent to defraud Ireland. The purport of instruction number five was to tell the jury that the consent of the directors to the transaction would not relieve defendant from guilt if he participated in the act with fraudulent intent.

The defendant asked the court to give the following instruction, which was refused: "3. An intent to defraud Joe Ireland or his bondsmen is a necessary element to justify any conviction in this case; and if you believe from the testimony that it was the belief of those making the entry on the books at the time it was made that Joe Ireland was fully secured by the property conveyed to him by defendant, you may consider that fact in determining whether there was any intent to defraud, even though it appears that the property was afterwards sold for a sum insufficient to pay the account of Ireland."

We think that the substance of this instruction is covered by those given, and that there was no prejudicial result from the court's failure to give it. Moreover, the form of the in-

struction is open to the objection that it singles out one cir-
cumstance and directs the jury's attention to it without reference
to the other facts and circumstances in the case. It does not
necessarily constitute prejudicial error to give such an instruc-
tion (*Hogue* v. ·*State,* 93 Ark. 316); but this court has
several times held that it is better practice not to give an in-
struction in that form, and that a case will not be reversed on
account of the failure of a trial court to do so. *Carpenter* v.
*State,* 62 Ark. 286; *Ince* v. *State,* 77 Ark. 418.

Error of the court is assigned in permitting witnesses to
testify concerning the state of defendant's account with the bank
and his indebtedness to the bank on the stock notes. These
were matters which were competent for the jury to consider
in determining the intent with which he made the changes in
the account.

Upon a careful consideration of the whole record in this
case, we reach the conclusion that the case was correctly tried
below, that the defendant had a fair trial and has been con-
victed upon legally sufficient evidence. The judgment is there-
fore affirmed.

WOOD, J., dissents on the ground that the evidence fails to
show an intent to defraud.

### ON REHEARING.

### Opinion delivered May 2, 1910.

HART, J. We have carefully considered the brief of coun-
sel for appellant on his motion for a rehearing, and on the
matters considered and determined therein we adhere to our
original opinion. Counsel for appellant now urge that the in-
dictment is defective because it does not charge that the entry
was falsely altered. This question was not raised by counsel
for appellant in their brief on the submission of the case, and
the point was ·overlooked by us. The rule that matters not
raised by counsel in their brief on the submission of a case
will not be considered on a petition for rehearing does not ap-
ply in felony cases. Hence the question is now before us for
determination. A majority of the court is of the opinion that
the objection is well taken. "Nothing can be taken by intend-

ment or by way of recital, to supply the want of certainty in an indictment." *State* v. *Ellis,* 43 Ark. 93.

"The charge must contain such a description of the crime, etc., that, without intending anything but what appears, the defendant may know what he is to answer, and what is intended to be proved, in order that the jury may be warranted in their verdict, and the court in the judgment they are to give." *United States* v. *Watkins,* 3 Cranch C. C. 441; 1 Chitty on Pleading, 237.

The charge in the indictment is that appellant "did feloniously and unlawfully alter and change," etc., "the books of account of said bank, kept by said corporation, said alteration and change having been made feloniously and unlawfully in said book accounts aforesaid by the said Frank Quertermous; said felonious, fraudulent charges and alterations aforesaid in said books aforesaid were made," etc.

The language of the statute under which the indictment was found is "shall falsely alter any entry," etc. We do not think the words "said felonious fraudulent change," as used in the indictment, take the place of, or are equivalent to, a charge that the entry was falsely altered. The latter is an essential ingredient of the offense. To charge that a thing is done falsely is an averment of a fact. The word "false" "distinctively characterizes a wrongful act known to involve an error or untruth." Anderson's Law Dictionary, p. 447. On the other hand, the word "fraudulent" relates, not to the act done, but to the intent with which it was done. It is rather a conclusion or inference that may be drawn from a given state of facts. The word "falsely," as used in the statute, not only imports an element of fraud or bad faith, but goes further and relates to the act done.

The gist of the offense is to "falsely alter the books," and, following the general rule that nothing material shall be taken by intendment, this fact should be apparent upon the face of the indictment by positive and direct allegations. Therefore, the court should have sustained the demurrer to the indictment.

Mr. Justice WOOD also thinks the testimony is not sufficient to support the verdict.

The petition for a rehearing will therefore be granted. The judgment, for the reasons given herein, will be reversed, and

the cause remanded with directions to sustain the demurrer to the indictment and for further proceedings.

McCULLOCH, C. J., (dissenting). We have said in recent cases that an indictment need not set forth the offense in the precise words of the statute if words of like import are used or if the indictment contains "a statement of the acts constituting the offense in ordinary and concise language and in such manner as to enable a person of common understanding to know what is intended." *Garner* v. *State,* 73 Ark. 487; *Richardson* v. *State,* 77 Ark. 321; *State* v. *Peyton,* 93 Ark. 406; *Harding* v. *State,* 94 Ark. p. 65.

It is alleged in the indictment that the defendant "did feloniously and unlawfully alter and change, with intent to defraud the said Joseph Ireland, * * * the books of account of said bank kept by said corporation, said alteration and change having been made feloniously and unlawfully in said book accounts by said Frank Quertermous, said felonious, fraudulent changes and alterations aforesaid in said books aforesaid were made in such a way and manner as to diminish and make said account to appear as same had been discharged."

It seems to me this language can not be reasonably construed otherwise than to mean that the alteration was falsely made. The language is not susceptible to any other construction without doing violence to the plain meaning of words. It certainly is sufficient "to enable a person of common understanding to know what is intended," and that is all that is required by our code of criminal practice. Kirby's Dig., § 2243.

The indictment alleges that it was a felonious, fraudulent alteration and this was necessarily a false alteration. These words are used in one place as descriptive of the intent and in another as descriptive of the criminal act. I think that the indictment was sufficient.

Mr. Justice FRAUENTHAL concurs.