The judgment must be affirmed.

ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.* LAMB.

Opinion delivered May 23, 1910.

1. INSTRUCTIONS—CONSTRUCTION.—The instructions given by the court in a case should be read and considered as a whole. (Page 212.)

2. SAME—GENERAL OBJECTION.—Ambiguity in a particular instruction is insufficiently pointed out by a general objection. (Page 213.)

3. CARRIERS—SPECIAL DAMAGE—NOTICE.—Where a carrier was put upon notice that teams and grading implements were being shipped to fulfill a grading contract, it will be held liable for the net earning capacity of such teams and implements during the time the carrier unreasonably delayed the shipment. (Page 213.)

4. INSTRUCTIONS—INVITED ERROR.—Appellant cannot complain of an error in an instruction given at his adversary's instance if the same error was repeated in an instruction asked by himself. (Page 213.)

5. APPEAL AND ERROR—HARMLESS ERROR.—The error of admitting improper evidence tending to enlarge the appellee's damages was not prejudicial to appellant where the verdict of the jury was for an amount which was supported by undisputed testimony, and it appears that the improper testimony had no influence upon the jury. (Page 214.)

Appeal from Chicot Circuit Court; *Henry W. Wells,* Judge; affirmed.

STATEMENT BY THE COURT.

J. I. Lamb brought this suit against the St. Louis, Iron Mountain & Southern Railway Company in the Chicot Circuit Court to recover damages for the alleged negligence of the defendant in the shipment of a car of grading implements from Memphis, Tennessee, to Luna, Arkansas. Lamb was a contractor, and was possessed of an outfit, consisting of a car of mules and a car of grading implements. These he shipped from Cor-

inth, Mississippi, to Memphis, Tennessee, and the laborers necessary to operate the same were brought along with them. When the cars reached Memphis, Lamb applied to defendant to ship over its line of railroad said two cars, containing his mules and grading implements, from Memphis, Tennessee, to Luna, Ark. He informed defendant's agents that he was carrying the outfit to Luna to fulfill a grading contract, and that his laborers were also being carried along with him, and their wages would begin as soon as they arrived at Luna. That it would be necessary for the car containing the mules and the one containing the grading implements to go forward together, in order that he might commence work at once on their arrival. That the agent of defendant promised him this would be done, and on the 24th day of January, 1907, issued to him a bill of lading for said two cars, consigned to himself at Luna, Ark. That he paid the freight thereon at the time he received the bill of lading. The car containing the mules reached Luna on the morning of the 27th inst., and in the meantime preparations had been made to commence work, the laborers having previously arrived on a passenger train. The car containing the grading implements did not arrive until six days later.

Lamb testified that each team could move 43 yards of dirt per day, and that he would receive therefor 20 cents per yard, making the gross earning of each team per day $8.60. That he paid his drivers $1.75 each, and that it costs 60 cents per day to feed a team. This left him a net earning of $6.25 for each team per day. That he had six teams, and that the delay in the shipments was 5½ days. That, figured on this basis of net earnings, his loss was $206.25. No other testimony on this point was introduced in evidence.

The railroad company adduced evidence tending to show that, under conditions existing at the time of shipment, the delay was not unreasonable.

The following instructions were given to the jury:

"1. The jury are instructed that if they believe from the evidence that plaintiff contracted with the defendant for the shipment over the railroad of the defendant of the grading outfit of plaintiff from the city of Memphis, Tenn., to Luna, in Chicot County, Arkansas, where plaintiff had a contract to do grading

work with said outfit, and if the jury further believe from the evidence that before or at the time of entering into said contract of shipment the plaintiff notified the defendant of the uses and purposes for which said outfit was being shipped, and that plaintiff would be at the said point of destination of said shipment with labor employed to operate the same, and that a failure on the part of defendant to deliver said shipment promptly would cause damage to the plaintiff consisting of the hire of said labor and earnings of said outfit, and if they further believe from the evidence that from the unreasonable delay in delivery of said shipment at its destination, or any part thereof, by reason of which plaintiff sustained damage, the jury will find for the plaintiff, and assess his damages at such sum as they find from the evidence resulted to plaintiff, including net earning capacity of said outfit and the hire paid by him to such labor during the time he may have been deprived of the use of said outfit by reason of the delay in shipment, and the legal rate of 6 per cent. interest upon said sum from the time such injury or damage was sustained.

"3. The court instructs the jury that, before the plaintiff can recover the special damages claimed, he must be satisfied by a fair preponderance of the testimony that at the time the bill of lading was issued in Memphis, Tenn., the plaintiff gave to the agent of the railway company notice of the special use the grading outfit was to be put to, and unless both cars arrived promptly that he would be forced to feed his mules, pay his labor, and lose the profits he could earn by the work of the outfit, and these special circumstances and damages must have been known by the railroad company at the time of the shipment before it can be liable therefor.

"2. The court instructs the jury that under the contract of shipment the defendant undertook and agreed to ship the outfit within a reasonable time, and under the contract defendant was not bound to ship plaintiff's horses and plaintiff's outfit on the same train nor on any special train, nor in any given time, nor in the speediest manner; the only obligation as to the time of forwarding this car load of scrapers was that it should be done in a reasonable time, and this means when they could have been transported, taking into consideration the conditions that actually

existed in the yards at Memphis and other places along the line of shipment as to congested condition of freight.

"4. The court instructs the jury that under the proof if they believe a delay of six days from Memphis to Luna would not be an unreasonable delay, your verdict will be for the defendant."

There was a trial before a jury, and a verdict for the plaintiff in the sum of $206.25. From the judgment rendered in favor of the plaintiff, the defendant has appealed.

*W. E. Hemingway, E. B. Kinsworthy* and *James H. Stevenson,* for appellant.

Perishable or live freight is given a preferred or quicker handling than dead freight, and this is reasonable. 2 Hutch. on Car., § 651. And this is required by law. 1 Fed. Stat. Ann. 444. All undue preferences to any shipper are prohibited. 3 Fed. Stat. Ann. 816-7; act of Cong. Feb. 4, 1887; 40 Fed. 1091; 39 Fed. 54; 43 Fed. 37. What is a reasonable time must depend on the circumstances. 18 W. Va. 361; 46 Miss. 458; 56 Md. 209. Instructions should not assume that the facts necessary to sustain them have been proved. 14 Ark. 286; *Id.* 530; 16 Ark. 568; 24 Ark. 540; 33 Ark. 350; 59 Ark. 417; 76 Ark. 333; 66 Ark. 506; 71 Ark. 38; 76 Ark. 468; 70 Ark. 337; 74 Ark. 563. Instructions should be based on the evidence, such as are not are abstract and improper. 8 Ark. 183; 15 Ark. 491; 14 Ark. 226; 21 Ark. 370; 23 Ark. 101; 26 Ark. 513; 33 Ark. 350; 41 Ark. 282; 54 Ark. 336; 63 Ark. 177; 65 Ark. 222; 70 Ark. 136; 70 Ark. 441; 63 Ark. 387; 77 Ark. 20. Only the damages are recoverable which may fairly be considered as naturally arising from the breach of the contract. 9 Exch. 341; 72 Ark. 275; 74 Ark. 358; 3 Hutch. on Car., § 1369.

Hart, J., (after stating the facts.) Counsel for appellant insist that the court erred in giving instruction No. 1 at the request of appellee. They contend in the first place that it assumes that there was an "unreasonable delay in the delivery." We do not think the instruction open to that objection, when read in connection with the other instructions given by the court. It is the settled rule of this court that instructions must be read and considered as a whole. In the instructions given at the request of the appellant, the court specifically told the jury that

it was their province to determine whether the delay was unreasonable. We refer to instruction No. 4 which, when read in connection with instruction No. 1, shows that the question of the reasonableness or unreasonableness of the delay was submitted to the jury. *Brinkley Car Works & Mfg. Co.* v. *Cooper,* 75 Ark. 325; *Ames Shovel & Tool Co.* v. *Anderson,* 90 Ark. 231.

The giving of instruction No. 4 asked by counsel for the defendant on this point was direct notice to them that the court did not mean to assume in any of its instructions that the delay was unreasonable, and if they thought the instruction in question was ambiguous or misleading in that respect they should have called the court's attention to it by a specific objection, and, not having done so, they have waived it. *Aluminum Co. of North America* v. *Ramsey,* 89 Ark. 522.

Again, they urge that the instruction is erroneous because it allowed the plaintiff to recover the net earning capacity of the teams and grading implements during the period of the alleged delay. There was no error in this. The defendant was put upon notice by the plaintiff that he would suffer this special damage if delay was made in the shipment of the grading implements, and the case is within the rule announced in *Chicago, R. I. & P. Ry. Co.* v. *Planters' Gin & Oil Co.,* 88 Ark. 77. In that case the court held:

1. "Where there was a delay in the transportation of machinery intended for a special use known to the carrier, it was responsible for such damages as were fairly attributable to the delay, having been informed that special damages would result therefrom, though it was bound to accept the shipment when tendered, and, under the Hepburn amendment to the interstate commerce act, could not make a special contract to compensate it for the additional risk."

2. "Notice to a carrier of special circumstances which would result in special damages to a shipper from delay in transportation of machinery imposes on the carrier the duty to use diligence commensurate with the requirements of the case, which duty the carrier performs when he uses reasonable diligence to forward the goods promptly."

Moreover, if there was any error in this instruction in this respect, it was repeated by the defendant in instruction No. 3

given by the court at its request, and it is not, therefore, ground for reversal. *Little Rock & M. Ry. Co.* v. *Russell,* 88 Ark. 172; *St. Louis & S. F. Rd. Co.* v. *Vaughan,* 88 Ark. 138.

It is next urged by counsel for appellant that the court erred in allowing testimony to go to the jury as to the amount of a feed bill paid by plaintiff on his car of mules while *en route* at Argenta, Ark., and as to the amounts paid his employees other than the drivers. These errors were eliminated by the verdict of the jury. The evidence of the plaintiff himself shows that the net earning capacity of the mules and grading implements during the period of delay contended for by him · was $206.25. This was all the testimony there was on this point, and no effort was made to contradict it by cross examination of the plaintiff or otherwise. Hence it may be said that the verdict of the jury, being for that precise amount, was based entirely on his testimony, and that the other testimony introduced had no influence on the jury in forming their verdict. Its admission, therefore, could not have prejudiced the rights of appellant, and it is the settled rule of the court that there will be no reversal except for prejudicial errors.

The judgment will therefore be affirmed.