J. T. FARGASON COMPANY *v.* DRIVER.

Opinion delivered May 31, 1926.

1.  APPEAL AND ERROR—HARMLESS ERROR—ADMISSION OF EVIDENCE.—
    The admission of improper evidence is not ground for reversal
    where the verdict of the jury shows that they disregarded it.

2.  FACTORS—EVIDENCE AS TO QUALITY OF CONSIGNMENT.—Where a
    factor sued his shipper of cotton for the difference between the
    amount advanced and the sale price of the cotton, and the ship-
    per filed a cross-complaint to recover damages caused by the
    broker's failure to sell the cotton advantageously, there being a
    dispute as to the quality of the cotton, it was admissible for the
    shipper to prove that it was dry, clean and white.

3.  APPEAL AND ERROR—REMARK OF COURT—CURE BY INSTRUCTION.—
    In an action involving the loss to a shipper by his factor's failure
    to sell cotton, a remark of the court during the shipper's examina-
    tion that the market value of the cotton at the point of shipment
    and place of sale was immaterial, if prejudicial, was cured by an
    instruction that the measure of the shipper's damages is the
    difference between the market price of the cotton at the place
    of sale within a reasonable time after its arrival and the price
    for which it was sold.

4.  APPEAL AND ERROR—REMARK OF COURT—WHO MAY COMPLAIN.—In
    an action involving loss incurred by a shipper through the fail-
    ure of a factor to sell cotton, remarks of the court that testi-
    mony as to what was paid for other cotton at the point of ship-
    ment, based on the market value at the point of sale of the cot-
    ton in question, does not show what the latter market price
    was, was prejudicial to the shipper, but not to the factor. .

5.  TRIAL—INSTRUCTION SINGLING OUT PARTICULAR CIRCUMSTANCES.—
    In an action involving the loss incurred by a shipper through
    failure of a factor to sell his cotton for the best price, a requested
    instruction that evidence of the effect of excessive rains, winds
    and cold weather may be considered in determining the quality
    of the cotton was properly refused as singling out particular
    circumstances to the exclusion of other circumstances.

Appeal from Mississippi Circuit Court, Osceola
District; *W. W. Bandy,* Judge; affirmed.

*A. F. Barham,* for appellant.

*J. T. Coston,* for appellee.

HUMPHREYS, J.   This suit was instituted on April
21, 1924, in the circuit court of Mississippi County, Osce-
ola District, by appellant against appellee, to recover

an alleged balance of $1,956.28 due for money advanced by appellant, a cotton factor, to appellee on 29 bales of cotton of the 1919 crop, shipped by appellee to appellant to be sold on commission. It was alleged that the advances, including interest, to the 22d day of February, 1924, amounted to $5,340.70, and that the total amount received from the sales of cotton and credited upon the account amounted to $3,384.40, leaving an indebtedness of $1,956.28 as of said date.

On April 26, 1924, appellee filed an answer and cross-bill, admitting in the answer that appellant advanced him at divers times moneys, goods, and merchandise amounting to $5,340.70, but alleging in the cross-bill that appellant failed to use sufficient care, skill and diligence in the sale of the cotton, and that it disregarded his instruction to sell same, to his damage in the sum of $5,000.

On the same date appellant filed an answer to the cross-bill, denying that it received instructions from appellee to sell the cotton, or that it waited an unreasonable time to make disposition of same, to appellee's damage in the sum of $5,000 or any other sum.

The cause was submitted to a jury upon the pleadings, testimony introduced by the respective parties, and the instructions of the court, which resulted in a verdict and judgment in favor of appellee on the cross-bill in the sum of $1,209, including interest, from which is this appeal.

In the year 1919 appellee cultivated between 85 and 100 acres of land and produced 41 bales of cotton thereon. He sold the first eight bales he picked at Osceola. He then picked and shipped the next 29 bales to appellant, 24 bales being shipped in November, 1919, and the remainder in December, 1919, and perhaps one bale as late as March, 1920. Appellant sold one bale of the cotton on January 12, 1920, for 60 cents a pound; one bale February 3, 1920, for 70 cents, one bale March 11, 1920, for 60 cents; five bales June 15, 1920, for 65 cents; and the remainder between March 30, 1921, and September 2,

1924, at a price ranging from 3 cents to 10 cents per pound. The testimony is conflicting as to the grade of the cotton. Appellee J. T. McGarrity, the man who ginned it, and J. H. Hook, who examined a part of the cotton while lying on the platform awaiting shipment to appellant, and who offered 40 cents a pound for what he examined, all testified that the cotton was clean and white. Appellee also testified that it was dry. Appellant testified that nearly all of the 29 bales were of a very inferior quality, wet, and discolored. Appellee testified that he sold the last four bales he picked in 1920, which was not so good as the cotton he shipped to appellant, to ———Bragg in Osceola, for 40 cents a pound early in the year 1920. J. H. Hook testified that he bought three bales of cotton from Sam Ware on January 3, 1920, for 37½ cents a pound, and that Meyers Bros. sold him two bales for 42 cents a pound on the 25th day of November, 1919. Appellee and W. P. Hale testified that, some time in February, 1920, appellee called on appellant in Memphis and asked what it could get for his cotton, and was informed that it could be sold for 50 cents a pound; whereupon appellee instructed appellant to sell it at once. Dave Fargason, to whom appellee claimed to have given this instruction, denied that he was requested to sell it, and stated that he made every effort to sell it after receiving it, but could not do so on account of the congested market and the inferior quality of the cotton. He also stated that it was sold as rapidly as the market would absorb it and at the best price obtainable when sold. Appellant introduced testimony tending to show that weather conditions in the fall of 1919 damaged a great deal of the cotton, and that only about one-fourth of the cotton brought to the Memphis market was of a high grade, and that 75 per cent. was of a very low grade, some being even below government classification. Henry Hotter, secretary of the Memphis Cotton Exchange, filed a statement showing how many bales of cotton were sold in Memphis each month from October 1, 1919, to December 21, 1921, with the average price of

various grades of cotton that were sold. This statement disclosed that, on or about June 12, 1920, various grades of white cotton sold from 26 cents to 45 cents per pound, and disclosed also what the lower grades sold for per pound.

During the cross-examination of appellee the question arose between the counsel for the respective parties relative to the character of evidence admissible to establish appellee's damage by reason of a failure to sell his cotton, and the court remarked, over the objection and exception of appellant, that it made no difference as to the market value of the cotton in Memphis or Osceola, for, if the jury found that the cotton was worth 50 cents per pound, that would be evidence for them to consider in arriving at the amount of damages, and in explanation said, "Here is the theory this case will be tried on. If the court finds that these people told this man, when he was talking to them about this cotton, that it was worth 50 cents a pound, this is evidence they may consider in reaching a conclusion as to what was the market value of the cotton in Memphis at that time." In the course of the examination of J. H. Hook the court, over the objection and exception of appellant, said, "The witness has testified that what he paid here was based on the Memphis market. It was introduced on the theory that it was based on the Memphis market. But it doesn't show what the Memphis market was, and can be used for that purpose only."

The main contention made by appellant for a reversal of the judgment is that the court erred in permitting appellee to testify to the offer that he received for the cotton at Osceola before he shipped same to appellant and the price he had received for the balance of the cotton before he made the shipment to appellant, and in permitting J. H. Hook to testify that he had offered appellee 40 cents a pound for a portion of the cotton which he examined on the platform in Osceola the latter part of November, and his testimony to the effect that, on January 3, 1920, he paid Sam Ware 37½ cents a pound

for three bales of cotton and Meyers Bros. 42 cents a pound for two bales of cotton on November 25, 1919. We do not think any prejudice resulted to appellant on account of this testimony, for the reason that it is apparent from the amount of the verdict that the jury did not consider their testimony in this particular in determining the case. The verdict is as follows: "We, the jury, find in favor of H. L. Driver against J. T. Fargason Company for the sum of $944.76, with interest thereon at the rate of 6 per cent. per annum from June 15, 1920, down to this date. L. D. Fast, foreman."

The verdict points unerringly to the fact that the jury determined that the cotton could have been sold by appellant in the exercise of proper care and diligence on the 15th day of June, 1920. The amount of the verdict also points unerringly to the fact that it figured the amount of damages sustained by appellee upon the basis of about 26 cents a pound for the cotton which was sold subsequent to June 15, 1920. The evidence objected to tended to show that the cotton was worth about 40 cents or 50 cents a pound, so the jury must have reached its conclusion from the testimony of Henry Hotter, as he was the only witness who testified that the average price of white cotton ranged from 26 cents to 40 cents a pound on and about that date. It seems that the jury took the lowest price fixed by him for that character of cotton in arriving at the verdict. *St. L. I. M. & S. R. Co.* v. *Brady,* 83 Ark. 489; *St. L. I. M. & S. R. Co.* v. *Caldwell,* 89 Ark. 218; *St. L. I. M. & S. R. Co.* v. *Lamb,* 95 Ark. 209. We think the testimony of appellee J. H. Hook and J. T. McGarrity was clearly admissible in so far as it reflected the kind and character of cotton which was shipped to appellant.

Appellant also contends that the judgment should be reversed on account of the remarks made by the court during the cross-examination of appellee. These remarks are set out in the statement of facts herein. If they were prejudicial to appellant, the prejudice was entirely

removed by instruction No. 2-A given at the request of counsel for appellant, which is as follows:

"The measure of defendant's damages, if you find that he is entitled to any, would be the difference between the fair market price of his cotton at Memphis, Tennessee, within a reasonable time after its arrival there, and the actual price for which it was sold."

This instruction was followed by two other instructions, Nos. 5 and 6, which clearly indicated to the jury that it must not render a verdict for damages in favor of appellee on any other basis than under the rule announced in instruction No. 2-A aforesaid.

Appellant also contends for a reversal of the judgment on account of the remark made by the court during the examination of J. H. Hook. The remark of the court called in question is set out *verbatim* in the statement of facts. The testimony which elicited this statement was introduced by appellee, and the statement of the court to the effect that "it does not show what the Memphis market was," was detrimental to appellee, and could not have prejudiced the cause of appellant.

The last contention of appellant for a reversal of the judgment is the refusal of the trial court to give appellant's requested instruction No. 9, which is as follows:

"In determining the grade and character of defendant's cotton you may consider the evidence, if any, as to weather conditions during the picking season of defendant's crop, and the probable effect of excessive rains, winds and cold weather upon such parts of defendant's cotton as you may believe, from the evidence, was exposed to such weather."

This instruction ignores the testimony of appellee J. H. Hook and J. T. McGarrity as to the character of cotton which was shipped to appellant. It singles out the weather conditions as the sole criterion to guide the jury in arriving at the grade and character of the cotton. While such an instruction would not have constituted prejudicial error if given, yet this court has condemned

the practice of singling out and emphasizing any particular circumstance in a case and directing the jury's attention thereon, to the exclusion of other facts and circumstances therein. *Railway Co.* v. *Lyman,* 57 Ark. 520; *Carpenter* v. *State,* 62 Ark. 312; *Hogue* v. *State,* 93 Ark. 316; *Quertermous* v. *State,* 95 Ark. 48.

No error appearing, the judgment is affirmed.