## WILLIAMS v. STATE.

4424 196 S. W. 2d 751

Opinion delivered October 14, 1946.

Rehearing denied November 4, 1946.

*Williams & Williams* and *R. S. Dunn,* for appellant.

*Guy E. Williams,* Attorney General, and *Earl N. Williams,* Assistant Attorney General, for appellee.

ROBINS, J. Information was filed by the prosecuting attorney against appellant, charging him with murder in the first degree, alleged to have been committed on

January 9, 1946, by killing Inez Williams, wife of appellant. In a "bill of particulars" filed by the prosecuting attorney in response to a motion of appellant and order therefor by the court, it was set out that "The State of Arkansas relies upon assaults committed on or about the 9th day of January, 1946, upon the person of Inez Williams, deceased, by the defendant, Perk Williams, in which assaults the defendant used his hands, fist and feet in a cruel and inhuman manner upon the person of the said Inez Williams, deceased, which resulted in shock, physical pain, suffering and injuries, mental agony and anguish, which assaults by the defendant upon the person of Inez Williams, deceased, directly contributed to, hastened and accelerated her death."

Having pleaded "not guilty," appellant was tried by a jury, found guilty of manslaughter and his punishment fixed at imprisonment in the penitentiary for two years. From judgment in accordance with the verdict this appeal is prosecuted.

For reversal appellant argues only that the evidence adduced was not sufficient to authorize a finding by the jury that Inez Williams' death was caused by the assault alleged to have been made upon her by appellant.

Appellant and his deceased wife lived on a farm ten miles west of Booneville, Arkansas. They had four children, two of whom, a boy, Randel, aged thirteen, and a girl, Lois Harlowe, aged 9, were at home at the time the difficulty is said to have occurred. A son, J. C., was in the navy, but came home after the difficulty and before his mother's death. A daughter, Selma, was working in Kansas City. For at least three years before her death Mrs. Williams had been in bad health. She was afflicted with extremely high blood pressure, which caused her at times to expectorate blood and which finally caused abnormal conditions in her heart and other organs.

This version of the difficulty was given by Randel Williams: "I came in from school; when I got to the creek I heard daddy hollering, I knew he was drunk. I went on home and helped him carry in wood, then I went out to milk. When I was about half through my sister

came out on the porch hollering. She said for me to come in. When I came into the house my mother and daddy were fussing and fighting. I separated them and she sat down for a while. I went on out and milked my cow, and when I came back in they had started fussing again. Daddy started the fussing. He was hitting her, hitting her on the head mostly. He had hold of her hair. Mother came in the kitchen and he followed her. She got some of his wine. She said that she was going to pour it out, and he grabbed hold of the hair of her head. I was trying to keep him from beating her. We all fell down. She got up and went into the front room and sat down. He came in and grabbed hold of the hair of her head and began hitting and beating her and kicking her. He jerked her down. Mother was on the floor when he was kicking her. He was kicking her all over. He almost kicked her into the fireplace. The fire scorched her dress. I managed to get him down, and we went up to the Lewis', a mile and a half from my house. The licks left black and blue spots all over her body. When my mother came back from Lewis' she went to bed. After that, until she went to the hospital, she got up once in awhile and sat by the fire. She never did stay up over five or ten minutes. Before the fight she was spitting up blood, not very bad. After the fight she began spitting up more.''

Mrs. Lizzie Shackleford testified that she visited Mrs. Williams at the hospital, where she was taken on January 15, and that Mrs. Williams' leg was ''beat black'' from the knee to the upper portion of her hip, and her left eye was black.

Mrs. Clara Lewis testified that on the night of the difficulty Mrs. Williams was unable to lie down in bed and had to be propped up.

Lois Harlowe Williams, nine-year-old daughter of appellant and deceased, corroborated her brother, Randel, as to the difficulty, saying, ''He tromped her and kicked her and pulled her hair'' after he had beaten her.

Dr. S. P. McConnell testified that when Mrs. Williams was brought to the hospital she had very high blood pressure, was unable to lie down, was gasping for breath

and spitting up blood; that she had had high blood pressure for three years. This occurred in his testimony: "Q. With the facts that he did assault her and kick her, and you knowing her condition prior to that time and after that time, can you tell this jury that the assault hastened her death? A. I'd not hesitate to say it would make her condition worse and her previous condition resulting from maltreatment would probably hasten her death by making it worse, but, as being the direct cause, I wouldn't say. Q. But it would have a tendency to aggravate it? A. Yes, in a way it would aggravate her condition, that would be the tendency. Q. Knowing her condition as you know it and knowing he did assault her on the 9th day of January, that he did kick her about the head, can you say that hastened her death? A. I would say that it would have a tendency to."

Dr. McConnell testified that she died at his hospital on January 19th of hypostatic pneumonia, caused by a leakage of blood into the lungs, due to the inability of the heart to take care of the circulation.

Appellant denied that he beat or kicked his wife on the occasion mentioned in the information. There was medical testimony introduced by appellant tending to show that the beating and kicking said to have been administered to her by appellant did not in any manner contribute to her death, but that her death resulted from the high blood pressure and complications caused by it.

"The question whether the death charged in an indictment for homicide was the result of the felonious or unlawful act of the defendant, so as to afford a basis for a charge of homicide, is one of fact for the jury to determine." 26 Am. Jur. 509.

In *Kee* v. *State*, 28 Ark. 155, this court approved this statement from Bishop on Criminal Law, § 653:

" 'Whenever a blow is inflicted under circumstances to render the party inflicting it criminally responsible, if death follows, he will be holden for murder or manslaughter, though the person beaten would have died from other causes, or would not have died from this one,

had not others operated with it; provided, that the blow really contributed mediately or immediately to the death as it actually took place in a degree sufficient for the law's notice.' ''

The jury evidently found, despite appellant's denial, that appellant had assaulted his wife in the manner detailed by the two children, and, of course, this finding is binding on us. *Bell* v. *State,* 93 Ark. 600, 125 S. W. 1020; *Quertermous* v. *State,* 95 Ark. 48, 127 S. W. 951; *Tiner* v. *State,* 109 Ark. 138, 158 S. W. 1087; *Allison* v. *State,* 161 Ark. 304, 256 S. W. 42; *Taylor* v. *State,* 186 Ark. 162, 52 S. W. 2d 961; *Arnett* v. *State,* 188 Ark. 1106, 70 S. W. 2d 38; *Link* v. *State,* 191 Ark. 304, 86 S. W. 2d 15; *Burnett* v. *State,* 197 Ark. 1024, 126 S. W. 2d 277.

So the only question for our decision is whether there was any proof from which the jury might find that the assault caused or hastened the death of Mrs. Williams. Admittedly, this woman was sickly and almost an invalid. The assault made upon her by appellant, as detailed by witnesses for the state, was a savage and brutal one. She was confined to her bed almost continuously from the time the assault took place until her death. In less than a week after the difficulty she was forced to go to a hospital where she died ten days after the attack had been made on her. When we consider all these circumstances along with the testimony of Dr. McConnell as to the tendency of the attack to aggravate her condition, we are impelled to the conclusion that there was substantial evidence to support the jury's finding that the attack made on Mrs. Williams by appellant caused or contributed to her death. See *Outler* v. *State,* 154 Ark. 598, 243 S. W. 851; *Jackson* v. *State,* 206 Ark. 611, 176 S. W. 2d 909; *State* v. *Chiles,* 44 S. C. 338, 22 S. E. 339.

No error appearing in the proceedings in the lower court, the judgment is affirmed.