OUTLER *v.* STATE.

Opinion delivered September 25, 1922.

1. CRIMINAL LAW—APPEALS IN CAPITAL CASES.—Crawford & Moses' Dig., § 3404, requiring appeals to be allowed by a judge of the Supreme Court in convictions in capital cases, applies only where accused is sentenced to be electrocuted, and in other cases an appeal may be granted by the trial court under Crawford & Moses' Dig., § 3396.

2. HOMICIDE—EVIDENCE AS TO CAUSE OF DEATH.— In the absence of other cause of death, which occurred a few hours after defendant struck deceased a violent blow across the head with a gun, knocking him down, the jury were warranted in making the inference, without direct proof on the subject, that death resulted from the blow.

3. HOMICIDE—EVIDENCE OF MALICE AND DELIBERATION.—Evidence of malice and deliberation *held* sufficient for conviction of murder in the first degree.

4. CRIMINAL LAW—IMPROPER EVIDENCE—EFFECT OF WITHDRAWAL.— The prejudicial effect of admitting statements by defendant's brother, made in defendant's absence, was cured by the court's subsequent withdrawal thereof from the jury.

5. CRIMINAL LAW—CONDUCT OF DEFENDANT AND BROTHER.—Joint conduct of defendant and his brother immediately after the fatal blow was admissible as part of *res gestae.*

6. HOMICIDE—HARMLESS ERROR.—Any error in refusing an instruction on manslaughter was harmless where the jury, on correct instructions as to the degrees of murder, found defendant guilty of murder in the first degree.

7. CRIMINAL LAW—COERCING JURY.—No improper argument or pressure was brought to bear on the jury to induce a verdict where, after they had returned and announced their inability to agree, the court merely declared that it would hold them together as long

as there was any possibility of a verdict, and that it was their duty, without yielding any positive conviction, to exert every reasonable effort to reach a verdict.

Appeal from Montgomery Circuit Court; *Scott Wood,* Judge; affirmed.

*C. H. Herndon* and *Earl Witt,* for appellant.

*J. S. Utley,* Attorney General; *Elbert Godwin* and *W. T. Hammock,* Assistants, for appellee.

McCULLOCH, C. J. Appellant, Buck Outler, was convicted of the crime of murder in the first degree, alleged to have been committed on December 24, 1921, in Montgomery County, by striking with a gun and killing Will Blackburn. The jury fixed appellant's punishment at imprisonment in the penitentiary for life, and, upon the overruling of appellant's motion for a new trial, the court granted an appeal to this court.

It is first contended by the Attorney General that the case is not properly here for review because the appeal was granted by the trial court and not by this court or by one of the judges of this court. The Attorney General relies upon the statute (Crawford & Moses' Digest, § 3404) which provides that "in cases of conviction of a capital offense" an appeal must be allowed by a judge of the Supreme Court. We are of the opinion that the words "capital offense" refers to the degree of offense named in the judgment of conviction, and not to the original charge in the indictment. The point is, we think, ruled by the decision of this court in *Walker* v. *State,* 137 Ark. 402, where we held that, upon conviction of murder in the first degree, with the punishment fixed at life imprisonment, the accused was entitled to bail on appeal. It follows that, since the statute does not require the appeal to be granted by this court or one of the judges, the method of appeal falls within another statute, which authorizes the trial court to grant an appeal in a felony case. Crawford & Moses' Digest, sec. 3396.

The killing occurred, according to the evidence, on the night of December 24, 1921, at a certain schoolhouse

in Montgomery County, where a Christmas tree celebration was being held by the people of the neighborhood. Appellant and his brother Leroy were present, and were intoxicated. Their father, Joe Outler, was also present and was acting as a special deputy sheriff for the purpose of preserving order on the occasion, and he deputized deceased, Blackburn, to assist in preserving order.

Jim Taylor and Edgar Taylor, two young men of the neighborhood, were also present, and an altercation arose between appellant and Jim Taylor. They came to blows, but were separated by the elder Outler, who placed his son, appellant, in charge of Blackburn. After holding appellant in custody for a short time outside of the building, Blackburn decided to release appellant, and did so, telling him to go back in the house and behave himself. Appellant went home at once and armed himself with a shotgun and returned to the schoolhouse, where the celebration was still in progress. He met Edgar Taylor at the door, and after a word or two passed between them—not of an unfriendly nature—appellant struck Taylor with the gun, which was accidentally discharged.

Blackburn was standing on the inside of the door when the shot was fired, and he picked up a lantern from a shelf and started out of the door. As he reached the bottom of the steps he spoke to appellant, who was in the act of striking Edgar Taylor, saying, "Don't do that," whereupon appellant turned and advanced upon Blackburn several steps, and raising himself up, as witnesses say, upon his toes, struck Blackburn a violent blow across the head with the gun. He knocked Blackburn down, and some of the witnesses say he struck him the second time.

About that time appellant and his brother Leroy rushed into the room and into the presence of the excited crowd, cursing and commanding the people to stand back, and, among other things, they said, referring to deceased, "He come out there and drawed a damn little short gun on me like this." They also spoke of Blackburn having been deputized, exclaiming, "If any damn son of a bitch

wants to be deputized, come on.'' These profane and vulgar expressions were made by Leroy, however, and repeated by appellant.

Blackburn walked into the room with blood streaming down from his head and face, and was engaged in wiping his face with a cloth. The testimony tends to show that it was not thought, either by Blackburn himself or those present, that Blackburn was seriously hurt, at least there is no testimony directly on this subject, some of the witnesses merely stating that Blackburn was wiping blood from his face and seemed to be conscious. None of the witnesses detailed the circumstances under which Blackburn left the house, or what occurred after that time, but it was proved that Blackburn went home and died early the next morning.

It is earnestly contended that the evidence is insufficient to warrant the conviction, for the reason that it was not proved that death resulted from the blow delivered by appellant. There is nothing, however, in the record to show that there was any other cause for the death which resulted so soon after the infliction of the blow, and the jury were authorized, we think, in drawing the inference, even in the absence of direct proof on the subject, that death resulted from the blow.

Again, it is insisted that the evidence is insufficient to justify conviction of the highest degree of homicide for the reason that the proof shows that deceased and appellant were on friendly terms up to the time the blow was struck, and that there was no proof to show either malice or deliberation. The evidence shows clearly, however, that appellant assaulted Blackburn without any provocation whatever, and that the assault was of such a violent nature that the jury were warranted in the conclusion that it was made with the intent to take the life of deceased, and that it was done after such deliberation as constituted murder in the first degree.

Appellant testified that Edgar Taylor was the aggressor in the difficulty in which he was engaged at the

time Blackburn came out of the door, and that he thought Blackburn was one of the Taylor boys coming out to join in the assault. But other witnesses testified that Blackburn came out with a lantern in his hand, and that he called out to appellant "not to do that," meaning not to strike Taylor again. These circumstances warranted the conclusion by the jury that appellant knew it was Blackburn, and that he deliberately turned on him with a murderous intent.

The court permitted the State not only to prove the conduct of appellant and his brother Leroy immediately after the blow was delivered as those parties returned into the schoolhouse, but also to prove statements made by Leroy in the absence of appellant. The court subsequently withdrew from the jury the statements made by Leroy in the absence of appellant, and this, we think, cured any prejudicial effect that might have resulted from the original ruling of the court in allowing the testimony to be heard by the jury. It was competent for the State to show the joint conduct and declarations of appellant and his brother immediately after the blow was struck. The evidence showed that the men walked into the room immediately after the blow was struck, and that they were cursing and declaring that deceased had drawn a gun. These declarations were competent as a necessary part of the transaction under investigation. *Childs* v. *State,* 98 Ark. 430.

The court refused to grant appellant's request for an instruction on manslaughter, and this ruling is assigned as error. Conceding that there was evidence warranting the submission of the issue as to that degree of homicide, we are of the opinion that there was no prejudice in the ruling of the court, for the reason that the jury, upon instructions correctly submitting the degrees of murder, found appellant guilty of murder in the first degree, which implies a finding that the killing was done with malice and after deliberation. *Jones* v. *State,* 102 Ark. 195.

The court gave correct instructions defining the difference between the two degrees of murder and stating the elements of those two crimes. Among other instructions, the court gave the following:

"You will first determine whether or not the evidence proves that the defendant is guilty of murder in the first degree. If, after fully and fairly considering all the evidence in the case, you are convinced that the defendant killed Will Blackburn with malice aforethought and after premeditation and deliberation. it would be your duty to find him guilty of murder in the first degree. But if, after such consideration of the evidence, you entertain a reasonable doubt as to whether deliberation and premeditation have been proved, you should not find him guilty of murder in the first degree, but you should then consider whether or not he is guilty of murder in the second degree. If, after fully and fairly considering the evidence, you are convinced that the defendant killed the deceased without considerable provocation, or on account of a desire to harm him or do him evil, or to avenge some real or fancied injury, then you should find the defendant guilty of murder in the second degree; but if you have a reasonable doubt as to whether or not the defendant killed the deceased with malice aforethought, express or implied, you should find him not guilty."

It will be observed that the court told the jury in this instruction that if they entertained a reasonable doubt "as to whether deliberation and premeditation have been proven, you should not find him guilty of murder in the first degree," and the jury returned a verdict of murder in the first degree, which showed that they found beyond a reasonable doubt that the killing was done with deliberation and premeditation.

Again, the instruction told the jury that if they had any doubt as to whether or not appellant killed the deceased with malice aforethought they should find him not guilty. This was more favorable than appellant was entitled to, for, even though it was found that the killing

was done without malice, it would have constituted manslaughter, unless the killing was justifiable as an act of self-defense. At any rate, the verdict of the jury under this instruction necessarily implied a finding that the killing was not done under circumstances which would reduce the degree of the offense to manslaughter, and no prejudice resulted from the failure of the court to instruct on the subject of manslaughter.

Finally, it is contended that the court erred in its final charge to the jury after the jury had returned to the courtroom and announced the inability of the jurors to agree upon a verdict. When the whole statement of the trial judge is considered together, it is clear that no improper argument or pressure was brought to bear upon the jury to induce a verdict. The court declared, in substance, that it would hold the jury together as long as there was any possibility of a verdict, and that it was the duty of the jurors, without yielding any positive convictions, to exert every reasonable effort to reach a verdict.

We are of the opinion that there was no prejudicial error in the record, and that the evidence is sufficient to support the verdict.

The judgment is therefore affirmed.