ALLISON *v*. STATE.

4266                                    164 S. W. 2d 442

Opinion delivered June 29, 1942.

*Hibbler & Hibbler*, for appellant.

*Jack Holt*, Attorney General, and *Jno. P. Streepey*, Assistant Attorney General, for appellee.

GRIFFIN SMITH, C. J. Rape was charged by information. The jury convicted and assessed the death penalty. Pope's Digest, § 3405. The appeal questions sufficiency of the evidence and alleges error in the admission of defendant's confession.

The attorney general, without discussing the matters assigned as errors, rests upon the proposition that the bill of exceptions was not filed within the time allowed. We think the point is well taken.

The verdict was returned February 4, 1942. Defendant's motion for a new trial was filed the following day, and overruled February 13. Appeal was denied. Fifty-eight days were allowed for bill of exceptions. It was approved May 6 and filed with the circuit clerk May 7. Excluding February 13, and allowing all of the fifty-eighth day, Monday, April 13, and not May 7, was the last day.[1]

Section 1 of Act 158, approved May 8, 1899, authorizes circuit courts to grant appeals from convictions for offenses other than capital crimes. Section 2 is: "If the court in which conviction is had shall refuse to grant an appeal to the supreme court, such an appeal may be granted by any judge or judges of the supreme court, in manner as now provided by law." Pope's Digest, § 4240. A headnote prepared by the editor who compiled the Acts reads: "Circuit court to grant appeals for all offenses except capital."

In *Bromley* v. *State,* 97 Ark. 116, 133 S. W. 813, it was held that failure of the defendant to file a transcript in the supreme court within sixty days was fatal to the appeal, no application having been made to this court to compel the circuit clerk to expedite the work. In commenting on the procedure, Chief Justice McCulloch said it had been repeatedly held that the statute limited jurisdiction, and "even in the event of hinderance by reason of unavoidable casualty the court cannot take cognizance of an appeal unless it is perfected within sixty days." The reference was to a misdemeanor. It was also said: "Since then the statute has been amended so as to limit

---

[1] For methods applicable to computation of time in criminal cases, see *McNutt* v. *State,* 163 Ark. 122, 259 S. W. 1, where it was held that § 3423 of Crawford & Moses' Digest (now § 4266 of Pope's Digest) contemplates that when the last day of the sixty-day period allowed for appeals falls on Sunday, the transcript may be filed the following day. [But the rule is different in civil cases. Also see *Clark* v. *American Exchange Trust Co.,* 189 Ark. 717, 74 S. W. 2d 974; *Bank of El Paso* v. *Neal,* 181 Ark. 788, 27 S. W. 2d 1024].

to sixty days after judgment the time for suing out a writ of error. Act of May 6, 1909. [Pope's Digest, § 4236.] It follows that the transcript has not been filed here in time to give this court jurisdiction."

But, it may be argued, § 4249 of Pope's Digest confers upon a judge of the supreme court power "to extend the time for filing the *record*."[2]

There is the further provision (Pope's Digest, § 4250) that "The court may act upon and decide a case in which the appeal was not prayed or the record was not filed in the time prescribed, when a good reason for the omission is shown by affidavit."

These sections are from title 9, chapter 1, § 327, of the Criminal Code. Their effect was modified by Act 158 of 1899, which, as heretofore shown, permits circuit courts to allow appeals "for all offenses except capital."

The term "capital offense" was defined by Chief Justice McCulloch in *Outler* v. *State*, 154 Ark. 598, 243 S. W. 851. The first headnote to the Arkansas Reports is: "Crawford & Moses' Digest, § 3404 [now § 4227 of Pope's Digest], requiring appeals to be allowed by a judge of the supreme court in convictions in capital cases, applies only where accused is sentenced to be electrocuted, and in other cases appeal may be granted by the trial court under Crawford & Moses' Digest, § 3396 [now § 4239 of Pope's Digest"].

In *Adams* v. *State*, 203 Ark. 1057, 160 S. W. 2d 42 it was held that while felony appeals must be lodged within sixty days from judgment "unless additional time is given by a justice of the supreme court," time for filing the bill of exceptions cannot be enlarged by this court. The statement that time may be extended appears to be in conflict with the Bromley case. If, as Chief Justice McCulloch said, jurisdiction can only be conferred by filing the transcript within sixty days, the right to give additional time is non-existent because when the sixty-day period has expired there is no method by which jurisdiction can be acquired; yet, for many years, the practice has been for individual judges to

[2] Italics supplied.

grant extensions in cases where it was made to appear that the appellant was without fault in allowing the statutory time to lapse.

In the case at bar jurisdiction was acquired by this court when the judgment was filed April 14th, the sixtieth day after judgment. Certiorari was issued by the clerk directing that the record be brought up. But there is no record upon which error can be predicated. The record proper, according to Stevenson's Supreme Court Procedure, includes the pleadings, exhibits, statement showing service of summons, any material order of the court preceding judgment, the judgment itself, motion for a new trial, order overruling such motion, and the order granting appeal. *Morrison* v. *St. Louis-San Francisco Railway Co.*, 87 Ark. 424, 112 S. W. 975.

Perhaps the only ground upon which the Bromley case and the Adams case can be harmonized is that which distinguishes the court's right to grant additional time when the motion for relief (accompanied by the judgment and such other parts of the record as appellant may care to present) is filed within sixty days, as contrasted with a similar request made after the sixty-day period has expired. Certainly, when the record is filed within sixty days, the supreme court has jurisdiction; and though it may be questionable whether a judge has power to extend time, we prefer, when there is uncertainty, to resolve the doubt in favor of a liberal construction, and to adhere to the practice recognized during the past few years.

It must be remembered, however, that no power reposes in this court to increase the time allotted for filing a bill of exceptions with the circuit court, and unless it is so filed within sixty days—that is, not later than the sixtieth day [3]—only the record can be considered on appeal.

. . . .

It is always unsatisfactory to dispose of an appeal on technical grounds, and this is particularly true in criminal cases when the penalty is severe. But if this pro-

---

[3] Unless the sixtieth day should fall on Sunday. If this occurs, a filing on Monday, the sixty-first day, would be permissible.

ceeding should be disposed on its merits, rather than on the record alone, it would have to be affirmed.

. . . .

The morning of January 21, Mrs. Annie Benson, who lived at McGehee with her sister, Mrs. Inez Humphrey, was awakened. In the bed with Mrs. Benson was a young nephew. Mrs. Benson, who first thought her brother was attempting to awaken her, turned and looked into the face of a Negro, who demanded money. The intruder was informed there was none. Mrs. Benson testified he was armed with a small pistol, and she was "paralyzed with fear." The Negro, later identified as appellant, directed her to go into an adjoining room, where his lust was satiated.

Appellant admitted he was an itinerant burglar and could not remember how many houses he had entered or attempted to enter the night of January 20-21. After being arrested appellant was brought to Little Rock and questioned by Sergeant Templeton of the Arkansas state police; Prosecuting Attorney Henry Smith, of Pine Bluff, and Sheriff Howard Clayton, of Desha county. When asked how he awakened Mrs. Benson, appellant replied: —"I shook her with my hand. I had a stick so she would think it was a pistol. It didn't take long to get this woman up. I asked her if she had any money she could give me, and she said she did not. Other testimony is printed in the footnote.[4]

Mrs. Benson's explanation of the transaction, in part, is shown below.[5]

---

[4] "While this conversation was going on Mrs. Benson was sitting on the side of the bed, in her nightgown. I told her to let's go into the next room. I still had the stick I was using as a pistol. I went into the other room because someone [else] was in the bed in this room. We lay down on the bed. I told her to lie down. . . . I did what I intended to do. . . . She laid down when I told her to. . . . She told me it wouldn't do me any good [and] I told her I wouldn't hurt her. I asked her if she was going to tell anyone about it."

[5] "It was in the neighborhood of four o'clock, judging by the light. I didn't look at a watch. It was before daylight. The first thing I knew—I had my back turned to the side of the bed—I was facing the other side—some one was shaking my shoulder. My brother comes and goes, and I didn't think anything about it: just laid there a few minutes. I was so sleepy I couldn't quite get up. [The in-

The confession of appellant and the testimony of Mrs. Benson—some of which is not copied—were sufficient to establish the crime of rape. A holding in *Threet* v. *State,* 110 Ark. 152, 161 S. W. 139, was that if the female who charged she was raped failed through fear to resist or to make outcry, the assault was against her will. To the same effect is *Jackson* v. *State,* 92 Ark. 71, 122 S. W. 101. To this declaration of the law, however, there was added the statement that if the defendant testifies sexual intercourse was by consent, it would be error to refuse to instruct the jury that if it found the female failed to complain immediately, or to make outcry, such facts should be considered in determining whether there was consent.[6]

There was no testimony to support argument in appellant's brief that his confession was wrongfully obtained. The defendant did not take the witness stand to deny the confession.

There is the suggestion that the judgment be modified by substitution of life imprisonment for electrocution. This we could not do even if the bill of exceptions had been filed in time, although in *Davis* v. *State,* 155 Ark. 245, 244 S. W. 750, the holding was otherwise. The applicable statute is expressed in fourteen words: "Any person convicted of the crime of rape shall suffer the punishment of death." Pope's Digest, § 3405.

---

truder] shook my shoulder again. Finally I turned over to see what it was, and I couldn't believe it! I was so scared when I saw him I was paralyzed. I saw a colored man standing there. He had a gun in his right hand: a small pistol. He asked for money and I told him I didn't have any. Then he said, 'Get up.' At first I just sat on the side of the bed. Naturally I was nervous and scared to death, and started shaking. He said I was making too much racket, that I would wake the child up. He made me go into the other room. I was so frightened I didn't know what else to do. . . . He said if I didn't make a racket he wouldn't have to shoot me: that he didn't want to have to shoot anybody. . . . I just hardly know what happened. The next thing (when I knew anything at all) I got up. I couldn't say whether I got down [on the bed] of my own accord, because I was paralyzed with fear. I thought I was going to get killed. I had an orphan nephew living there and I thought more of his welfare than I did of anything else. . . . He said that if I told, he would come back and kill me; that he read the papers and would know whether I reported it or not. . . . He took down his clothes and assaulted me: had intercourse with me."

[6] See *Pleasant* v. *The State,* 13 Ark. 360.

A discussion of the law's evolution is found in *Dennis, a Slave,* v. *The State,* 5 Ark. 230, at page 233:

"By an act of the revised statutes, approved 16th February, A. D. 1838, and which was afterwards put into operation by the proclamation of the governor, it was declared, 'that any person convicted of the crime of rape, should suffer the punishment of death.' The act, in respect to the punishment of the offense, made no distinction between the case of a white man and slave. A subsequent act of the legislature, passed 17th December, 1838, made distinction as to the punishment. It enacted that, whenever a white man should be convicted of the crime of rape, he should suffer punishment for the offense, by confinement for a term of years in the jail and penitentiary house of the state. The act excepts the case of a slave out of this provision, and affirms that, whenever a slave is convicted of the crime of rape, he shall suffer the punishment of death. The first section of the act of the last legislature, approved 14th December, 1842, declares, 'that all persons convicted of the crime of rape, shall suffer the punishment of death.' The second repeals all laws inconsistent with the provisions of the first section. The inquiry then is, what laws were inconsistent with this provision. The answer is at hand, and cannot be mistaken. So much of the act of December, 1838, as changed the punishment of rape, when committed by a white man, from death to confinement in the jail and penitentiary. This is the only law inconsistent with the provisions of the act of 14th of December, 1842; and this the second section of the last act expressly repeals. This last act, so far from repealing the old law or first act in regard to the penalty, reënacts its present provisions, and declares in all cases the punishment for the crime of rape shall be death; which had always been the case upon conviction of a slave, by all the statutes passed on that subject. The motion on this point, as well as on the other taken to the indictment, was properly overruled."

Act 187, approved March 20, 1915, gives the jury a right in all cases where the punishment at that time was death, to render a verdict of life imprisonment in the state penitentiary at hard labor. Pope's Digest, § 4042.

616

In *Webb* v. *State*, 154 Ark. 67, 242 S. W. 380, it was held that the Act did not repeal the old statute fixing the penalty at electrocution, "but merely gave the power to the jury to reduce the punishment to life imprisonment, and that a verdict finding the defendant guilty of that crime, without fixing the punishment at imprisonment, called for a judgment for the extreme penalty of electrocution."

The trial court instructed the jury that it might fix the defendant's punishment at electrocution, or at life imprisonment.

It will be observed that the discretion conferred by Act 187 relates to the jury, and not to the courts.

No errors are shown by the record proper, and the judgment must be affirmed. It is so ordered.

Mr. Justice MEHAFFY and Mr. Justice HOLT think the judgment should be modified by substituting life imprisonment for electrocution.