CARTER *v.* STATE.

4930                                            326 S. W. 2d 791

Opinion delivered May 25, 1959.

No brief filed for appellant.

*Bruce Bennett, Atty. General,* by *Bill J. Davis, Asst. Atty. General,* for appellee.

J. SEABORN HOLT, Associate Justice. Appellant, Jim Carter, was indicted by a Grand Jury for the crime of receiving stolen property. A jury found him guilty and fixed his punishment at one year in the penitentiary. This appeal followed.

Appellant has filed no brief in this case. Briefly, the record reflects that in the latter part of March, 1958, Lloyd Harper discovered that some of his cattle had been killed and slaughtered in the area where they usually ranged. He "found the feet and ears of three head of cattle and a lot of blood". The ears had his mark on them and each animal was worth about $80. Donald Stuckey, an employee of appellant, took the officers to the place where the animals had been slaughtered. Thereafter, Donald Stucky, Brown Rainey, one other person and appellant, Carter, were arrested. Stucky and Rainey told the officers that it was at Carter's suggestion that they go out and get some cattle and he, Carter, would consider as paid a bill of Stuckey's mother. It was testified that a pick-up truck belonging to appellant was used to transport the animals and a 22-caliber rifle hull was found near the spot where the animals were killed.

For reversal, appellant, in his motion for a new trial, assigned one error as follows: "Wherefore, defendant prays that, due to the fact that the Prosecuting Attorney asked for a continuance on all other involved cases and all other persons being tried because the sheriff could not be there and the trial judge gave that continuance, he be granted a new trial when the sheriff will be able to testify and so that Sheriff James Steed and Deputies Bill Dyer and James Bowers can testify before the jury and, if the trial judge refuses this motion, he is not giving justice to the defendant because he granted the Prosecuting Attorney's motion for a continuance upon the same grounds, over the objection of defense attorney, C. Van Hayes."

This alleged error was first raised by appellant in his motion for a new trial. It comes too late for this court to consider it. We have consistently adhered to the rule that before an alleged error, in felony cases of a lesser degree than capital, may be considered by this court on appeal, the complaining party must first make an objection, call for a ruling from the trial court, make and preserve an exception from an adverse ruling, and the matter complained of must be assigned as error in

a motion for a new trial. We announced this rule in *Ford* v. *State*, 222 Ark. 16, 257 S. W. 2d 30, in this language: "The complaining party must first make an objection in the trial court, and this calls for a ruling on his objection. An exception must then be taken to an adverse ruling on the objection, which 'directs attention to and fastens the objection for a review on appeal.' The matters complained of, together with the objections and the exceptions to the ruling of the court, must be brought into the record by a bill of exceptions; and the motion for a new trial can serve no other purpose than to assign the ruling or action of the court as error".

As indicated, since the alleged error complained of was first raised in the motion for a new trial, we do not consider it here.

Affirmed.

ROBINSON and JOHNSON, JJ., dissent.

McFADDIN, J., concurs.

ED. F. McFADDIN, Associate Justice, (concurring),

I concur in the affirmance of this case for the reasons herein stated.

After the jury brought in the verdict against appellant, Carter, his counsel filed a motion for new trial; and the entire motion, omitting only caption and signature, is as follows:

## "MOTION FOR NEW TRIAL

"Comes the defendant, James E. Carter, and states and alleges:

### I.

"That the Prosecuting Attorney asked for a continuance of the trial of Henry Glenn, Louis Coliron and Cornell Sanders, a colored man, because the Sheriff was an important member of the investigation of this entire case and that said defendant, James E. Carter, is firmly of the opinion that if said Sheriff testifies that some of the testimony of said Sheriff James Steed will be in his favor and if the

jury could have heard his testimony their verdict would have been for acquittal; that said defendant, James E. Carter, requests a new trial because the trial jury should have the benefit of the testimony of the Sheriff of this County, James Steed, and if trial court had enough belief in the motion of Prosecuting Attorney that Sheriff James Steed's testimony was important enough to continue the other cases involved, then said Judge should grant a new trial and hold the trial in abeyance until said Sheriff is able to come to the witness stand; that the defense attorney consistently insisted upon the Prosecuting Attorney placing the Deputy Sheriffs, Bill Dyer and James Bowers, on the witness stand and in his opening statement he challenged the Prosecuting Attorney to do this and was refused. The defense attorney is definitely of the opinion that if any jury could hear the testimony of Mr. Bill Dyer or Mr. James Bowers or the Sheriff James Steed on cross examination that they would find the defendant 'not guilty' and the Judge should, therefore, grant the defendant a new trial.

"Wherefore, defendant prays that, due to the fact that the Prosecuting Attorney asked for a continuance on all other involved cases and all other persons being tried because the Sheriff could not be there and the Trial Judge gave that continuance, he be granted a new trial when the Sheriff will be able to testify and so that Sheriff James Steed and Deputies Bill Dyer and James Bowers can testify before the jury and, if the Trial Judge refuses this motion, he is not giving justice to the defendant because he granted the Prosecuting Attorney's motion for a continuance upon the same grounds, over the objection of defense attorney."

It is my view that when a pleading is in writing, as was this motion for new trial, any remarks made in oral argument by Carter's attorney in the presentation of the motion cannot be seized on as an additional assign-

ment to the motion for new trial. So I take the position that there was no assignment in the motion for new trial about the absence of corroboration and that point cannot now be raised.

Furthermore, in Instruction No. 5, the Court told the jury that Carter could not be convicted on the uncorroborated evidence of an accomplice; and there is evidence in the record going to the matter of corroboration. The witness, Floyd Harper, testified to seeing where cattle had been slaughtered and the ears and feet left, and the mark on one of the ears showed it was Harper's cattle. The witness, Joe Swain, testified that he could see where cattle had been killed on the side of the road, and that he saw a yellow packing company truck along the same road. The witness, Virgil McCutcheon, testified that on Sunday morning he went down the Peeler Bend Road to the slaughterhouse and there was a trail of blood in the middle of the Peeler Bend Road for a mile on out to the slaughterhouse. The slaughterhouse was operated by Jim Carter.

Without dwelling any more on the matter, I reach the conclusion that the judgment should be affirmed.

SAM ROBINSON, Associate Justice, dissenting.

As I see it, there are two points for decision in this case: First, is there any evidence of appellant's guilt other than the testimony of accomplices? Second, is there a proper record before this Court raising the question of whether the accomplices are corroborated? In my opinion, there is not a scintilla of such corroborating evidence. True, the State's witness, Donald Stuckey, an acknowledged accomplice, implicates the appellant. And, although from Brown Rainey's testimony it is established that he helped Stuckey steal and butcher some cattle, it is not clear that an inference can be drawn from Rainey's testimony that Carter knew anything about the cattle stealing. But even if Rainey's testimony is susceptible to such an inference, it is perfectly clear that he is an accomplice. Other than the testimony of the two ac-

complices, there is no evidence of guilt on the part of appellant. At the scene of the killing of some of the cattle, the hull from a 22 rifle shell was found. It was shown that Carter owned a 22 rifle, but there was no effort to show that the 22 shell was fired from Carter's rifle, even though ample facilities are available to law enforcement officers to make such a determination, and, of course, untold thousands of people own 22 rifles. But even if it were shown that the cartridge came from the 22 rifle belonging to Carter, in this case that fact would carry no weight, since it is clear from the record that Stuckey, an accomplice, had full access to the rifle.

Carter owns a refrigerated truck with a red cab and yellow body, with his name painted on the side in bold letters. One Joe Swain testified that he saw a yellow truck on the road near the place where some cattle were killed on the day they were killed. But the record further shows that he did not know when the cattle were killed. He gives no explanation of how he knew the day the cattle were killed; in fact, the record shows that the first he knew about the matter was seeing it in a newspaper. The owner of the cattle had found evidence that cattle had been butchered, but he made no effort to say when they were butchered, other than that it was during the last of March or first of April. Stuckey says it was the first two weeks in April. Swain does not attempt to identify the truck he saw as belonging to Carter, nor does he say he saw Carter. The only evidence in the record that connects Carter with the crime is the testimony of Stuckey, and his testimony is not corroborated in any particular. The majority opinion states that a pick-up truck belonging to appellant was used to transport the stolen animals. The only evidence to this effect is the testimony of the accomplices.

It is the law of this State that a defendant cannot be convicted on the uncorroborated testimony of an accomplice. Ark. Stat. § 43-2116 provides: "A conviction can not be had in any case of felony upon the testimony of an accomplice unless corroborated by other evidence

tending to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows that the offense was committed, and the circumstances thereof . . ." The rule that a defendant cannot be convicted on the uncorroborated testimony of an accomplice has been firmly established since the 1700's. Professor Wigmore discusses the history of the rule in his great work on Evidence, 3rd Ed., Vol. 7, beginning at page 312, and quotes Lord Abinger in *R*. v. *Farler*, 8 C. & P. 106 (1837) : "It is a practice which deserves all the reverence of law, that judges have uniformly told juries that they ought not to pay any respect to the testimony of an accomplice unless the accomplice is corroborated in some material particular . . . The danger is that when a man is fixed, and knows that his guilt is detected, he purchases immunity by falsely accusing others."

The rule that a defendant cannot be convicted on the uncorroborated testimony of an accomplice has been proved to be a good rule, for centuries. We adopted it by statute in 1883. It should not be lightly cast aside.

The next point is whether the condition of the record is such that a reversal should be ordered because the accomplices' testimony is not corroborated. The majority opinion mentions only the appellant's motion for a new trial, in which there is assigned as error the action of the trial court in overruling a motion for a continuance. But this part of the motion for a new trial was only supplemental to a previous motion for a new trial on the ground that the verdict of the jury was based on the uncorroborated testimony of an accomplice. Subsequent to the time the verdict of the jury was returned, the attorney for appellant made a motion as follows: "Now, I move that the case be dismissed because the trial Court heard the case tried and there was not one person that got on the witness stand and testified that Jim Carter received any cattle or any meat whatsoever except Don Stuckey. And that the trial lawyer asked each one of them under oath, 'Can you turn here and tell this jury

that?' and they said, 'No, we can't do that.' And the Court knows that the law is under the testimony of Don Stuckey and the law, and the Court knows that this is the law, that you can't convict. And I ask now for a mistrial because the Court knows there wasn't any corroborating testimony." In overruling the motion, the trial court said: "Motion denied. The motion for a *new trial* is denied because the question raised therein was not raised at the proper time." [our italics]

It will be noticed that the last sentence in the motion states: "And I ask now for a mistrial because the Court knows there wasn't any corroborating testimony." And it appears that the only reason the court overruled the motion was that in the opinion of the trial court the question had not been raised at the proper time. The only other time it could have been raised prior to the time the motion was made would have been a motion for a directed verdict of not guilty, and such a motion was made when the State rested its case. The words "new trial" would probably have been more appropriate than "mistrial". It was, however, understood that appellant's attorney was speaking of a new trial, because the trial had been completed—the verdict had been returned, and the trial court treated the motion as one for a new trial. The court said: "The motion for a new trial is denied." True, the motion was oral, but there is no requirement that such a motion must be in writing. "A motion is an application made to a court or a judge for the purpose of obtaining a rule or order directing some act to be done in favor of the applicant. Motions are not regarded as pleadings in the ordinary or technical sense of the term, even where they are reduced to writing. A petition, in common phrase, is a request in writing, and in legal language describes an application to a court in writing, in contradistinction to a motion, which may be made *viva voce*." 37 Am. Jur. 502. Whether the motion was prior or subsequent to another motion for new trial makes no difference, just so it was made within the time allowed. Here there is no indication that it was not made within apt time.

"Where a supplemental motion was filed within the time allowed by statute, although after the original motion was overruled and an appeal granted the error relied on therein is available on appeal." 24 C.J.S. 378. In *Burton* v. *Commonwealth*, 248 Ky. 408, 58 S. W. 2d 650, the Kentucky court said: "At the outset we are met by the commonwealth's contention that the alleged error was not included in the motion and grounds for a new trial. We find, however, that, after the motion for a new trial had been overruled, an appeal granted, and the amount of the appeal bond had been fixed, appellant, at the same term, filed supplemental motion for a new trial on the ground that the change of venue was improperly refused. In the case of *Commonwealth* v. *Neal*, 223 Ky. 665, 4 S. W. (2d) 685, we had occasion to consider the question, and it was held that, although a motion for a new trial has been overruled, an appeal granted, and appeal bond executed, the defendant may file at the same term of court additional motion for a new trial."

I am at a loss to understand why the majority completely ignore appellant's motion for a new trial based on the contention that there is no evidence of guilt except the uncorroborated testimony of an accomplice. If it is because the motion was not in writing, the answer is that no law provides that it must be in writing. If it is because the word "mistrial" is used instead of "new trial", the answer is that the trial court understood it to be a motion for new trial and dealt with it as such, and, moreover, for this Court to make a final determination of the case on such an extreme technicality would be contrary to the modern trend of courts to decide cases on the merits and to avoid disposing of litigation on a technical rule of procedure. It is hard to believe that any court would hold that a person must go to the penitentiary, although there is no valid evidence of his guilt, because his lawyer in an oral motion used the word "mistrial" instead of "new trial". If the majority ignore the motion because no brief was filed in appellant's behalf, then the case should not have been considered at all. But the rule is to consider appeals in felony cases regardless

of the lack of or inadequacy of briefs. In my opinion, the only evidence of appellant's guilt is the uncorroborated testimony of an accomplice. There is an ample record, and the judgment should be reversed.

I am authorized to say that Mr. Justice Johnson joins in this dissent.