**Billy GROSS, Petitioner,**

v.

**O. E. BISHOP, Superintendent of the Arkansas State Penitentiary, Respondent.**

**No. PB-65-C-54.**

United States District Court
E. D. Arkansas,
Pine Bluff Division.

Sept. 13, 1967.

George E. Pike, Jr., Little Rock, Ark., for petitioner.

Robert D. Smith, III, Asst. Atty. Gen., State of Arkansas, Little Rock, Ark., for respondent.

## MEMORANDUM OPINION

HENLEY, Chief Judge.

This habeas corpus case, involving Billy Gross, an inmate of the Arkansas State Penitentiary, has been tried to the Court on a limited issue and has been submitted on the pleadings, oral testimony, and documentary evidence. This memorandum incorporates the Court's findings of fact and conclusions of law.

Petitioner was convicted of first degree murder in the Circuit Court of Conway County, Arkansas, in March 1964, and received a sentence of life imprisonment. He was promptly transported to the Penitentiary and has been confined there since that time. Due to circumstances which will be described he failed to appeal his conviction to the Supreme Court of Arkansas. However, for at least the past two years he has persistently sought to attack his conviction collaterally both in this Court and in the State courts. Of course, he was not entitled to maintain his attacks in this Court until he had exhausted State remedies, 28 U.S.C.A. § 2254, and this Court has withheld consideration of the merits of the petition so that State remedies could be exhausted.

Petitioner complains both of certain alleged trial errors, which are probably not subject to review in a habeas corpus proceeding, and of alleged deprivations of procedural due process of law, including an alleged denial to him of his right to appeal to the Arkansas Supreme Court.

At the commencement of the hearing counsel agreed that without the petitioner waiving any of his other contentions the Court's initial consideration should be limited to the question of whether petitioner was denied due process at the post-conviction level so that he lost his appellate rights.

The issue just stated must be considered in the light of all of the facts, both substantive and procedural, revealed by the record before the Court.

On the evening of September 29, 1963, petitioner, one Winegard or Winegert, and two women called at the home of Frank Birch, alias Dutch Chartan, in Conway County. The four people embarked upon a drinking party which culminated in a fight involving Birch and at least one of the two other men. At that time petitioner was on probation following pleas of guilty in Pulaski County, Arkansas, to charges of burglary, grand larceny, forgery, and uttering.

On the morning of September 30, 1963, which was a Sunday, the body of Birch was found in his home. Petitioner and Winegard were suspected of killing him, and warrants for their arrest were issued. Petitioner was apprehended in Lubbock, Texas, and was returned to Arkansas; Winegard was apprehended also.

Petitioner was confined briefly in the jail at Morrilton, the county seat of Conway County; he was then transported to Little Rock for the purpose of having his probation revoked by the Circuit Court of Pulaski County. That action was taken over petitioner's objection, and he was transported to the Penitentiary to begin the service of his original Pulaski County sentence.[1]

Gross was held in the Penitentiary from early October 1963 to late February 1964 when he was returned to Morrilton to face trial on the first degree murder charge which had been lodged against him.

In the meantime, O. D. Dill, a minister of the Gospel, had reported to acquaintances that well up into the morning of September 30, 1963, he and his wife while on the way to church had passed close to the home of Birch and had seen him alive and apparently well. That observation of Birch by Mr. and Mrs. Dill, if it took place, was inconsistent with the theory of the State that petitioner and Winegard had killed Birch during the night of September 29.

Due to poor health Dill did not desire to testify at a criminal trial, and he made no report of his alleged observation of Birch to the investigating officers. He may or may not have told petitioner's mother about it.

Petitioner was arraigned before the Circuit Court and on making a satisfactory showing of poverty was assigned counsel to represent him without charge. A plea of not guilty was entered. A motion for a mental examination of petitioner was made and was heard and overruled by the Circuit Court.

The trial began and lasted about three days. The record does not reflect whether counsel for petitioner had ever heard of Dill's story of having seen Birch alive on the morning of September 30. In any event Dill was not called as a witness. Petitioner did not learn of Dill's story until after his conviction.

Winegard was tried a few days after the trial of petitioner and was acquitted.

▮ Following his conviction petitioner had a right to appeal to the Supreme Court of Arkansas. Since he had not received a death sentence, the appellate procedure applicable to his case was that followed in non-capital cases. Allison v. State, 204 Ark. 609, 164 S.W.2d 442; Outler v. State, 154 Ark. 598, 243 S.W. 851. Under that procedure petitioner was required to secure from the Circuit Court an order granting the appeal; as a matter of practice such orders

1. Petitioner launched collateral attacks in both the State and federal courts on the action of the Pulaski County Circuit Court in revoking his probation; those

attacks did not succeed. Gross v. State, 240 Ark. 926, 403 S.W.2d 75; Gross v. Bishop, 8 Cir., 377 F.2d 492.

are entered as a matter of course upon request.

■ As far as time was concerned, petitioner was required to obtain the order within 60 days from the entry of the judgment or within such longer period, not to exceed 60 days, as the Court might prescribe prior to the expiration of the initial 60-day period. Ark.Stats., Ann., § 43–2701. That time limitation is jurisdictional. Hodges v. State, 233 Ark. 949, 349 S.W.2d 803.

Petitioner was also required to file a motion for a new trial and to settle and file a bill of exceptions within a limited time. Ark.Stats., Ann., §§ 43–2130 and 27–1747; Dokes v. State, 241 Ark. 720, 409 S.W.2d 827; Long v. State, 240 Ark. 687, 401 S.W.2d 578; Carter v. State, 230 Ark. 646, 326 S.W.2d 791; Yarbrough v. State, 206 Ark. 549, 176 S.W.2d 702. The record here does not disclose whether a motion for a new trial was ever filed; certainly, no bill of exceptions was filed, and the time for filing such bill, like the time for obtaining an appeal, has long since expired.

■ Under Arkansas law an indigent person convicted of an offense has a right to appeal in forma pauperis, and in that connection to be assigned appellate counsel to serve without charge, and to be supplied with a complete transcript of the trial proceedings without cost.[2] Ark.Stats., Ann., §§ 22–357 and 27–2129.1; Edwards v. State, 232 Ark. 748, 339 S.W.2d 947; McCulloch v. Ballentine, 199 Ark. 654, 135 S.W.2d 673; Thornsberry v. State, 192 Ark. 435, 92 S.W.2d 203. Thus, the Arkansas appellate procedure for indigents fully meets the constitutional requirements laid down by the Supreme Court of the United States in cases like Rinaldi v. Yeager, 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577; Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892; Burns v. State of Ohio, 360 U.S. 252, 79 S.Ct. 1164, 3 L.Ed.

2d 1209; and Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891.

■ On March 11, 1964, only a few days after entry of the Circuit Court judgment, petitioner wrote his trial attorney advising in substance that he desired to appeal, inquiring how long he had within which to appeal, and inquiring as to whether counsel would represent him in connection with the appeal. Petitioner did not state in that letter that he wished to appeal in forma pauperis; neither did he represent that he was able financially to prosecute an appeal. He did say that if counsel was sincere and wished to help him, he would "write my people and see if they will talk to you about finances for what this will cost."

The Court will say at this point that it finds that after his conviction, as well as before, petitioner was a pauper, and that this fact was known or should have been known to both his trial attorney and to the sentencing judge. There is some evidence that petitioner's mother may have given counsel $100 at one time "to help with the trial"; that contribution, if made, had nothing to do with any appeal and was not sufficient to finance an appeal. If petitioner was a pauper when he went to trial, there was no reason to suppose that his financial condition had improved or would improve post-trial, or that he would be able to finance an appeal.

Counsel testified in the course of the hearing that upon receipt of petitioner's letter, he inquired of the Circuit Judge as to whether his appointment included any responsibility to represent petitioner at the appellate stage. The Judge, since deceased, advised counsel that he had no appellate responsibility toward petitioner. It does not appear that counsel requested or suggested that other counsel be appointed to represent petitioner in

---

**2.** Such a transcript includes copies of all pertinent documents in the case and also the bill of exceptions which normally is itself a transcript of the proceedings at the trial, including the testimony of the witnesses, objections made, exceptions saved, and the instructions of the Court to the jury.

connection with an appeal, and the Circuit Judge did not appoint other counsel.

On March 14 counsel addressed a letter to petitioner advising him that he had 60 days from March 5 to file a notice of appeal. Counsel stated that he was not inclined to handle the appeal, and that he did not think that petitioner had much to gain from an appeal. Counsel stated that the question of whether or not to appeal was for petitioner to decide, and that counsel would not advise him one way or the other. Counsel went on to say that if petitioner desired to appeal, counsel would advise and assist any attorney who might be employed by petitioner.

On March 22 petitioner wrote another letter to counsel in which he stated: "After receiving your letter and giving it thought I have decided that I want you to notify the Court there that I want to appeal my case to the State Supreme Court as a pauper. Please let me know when this has been done".[3]

Counsel did not take the action requested by petitioner and did not reply to his letter until April 22 when he wrote petitioner:

"As stated in my letter to you dated March 14, I was appointed by the court to defend you, which I did to the best of my ability. I have done all the court asked me to do. If you want an appeal, that is up to you. It is up to you to get an attorney to do that, as the court has not appointed anyone to do it for you. *I do not know of any provision whereby the court can do that.* The law says you are entitled to a fair trial, and you got one.

"I made it clear in my letter to you that if you want an appeal, you will have to get an attorney. You have had plenty of time." (Emphasis added.)

On April 25, 1964, petitioner wrote counsel again. In that letter petitioner stated that he did not want counsel to prosecute the appeal to conclusion but did want him to "file the notice of appeal" in the Circuit Court, and that when that was done petitioner would apply to the Chief Justice of the Supreme Court of Arkansas to appoint appellate counsel. Petitioner again stated that he was a pauper without funds or property. He recognized that his appeal time would expire on or about May 5.

On May 1 counsel wrote petitioner as follows:

"There is more to starting an appeal than just giving notice; you have to have the court reporter transcribe all the testimony and file it with the Court Clerk within the sixty days. This costs money also. That is one of the reasons why I suggested from the start that you get an attorney to do this for you. However, if you did not have money for an attorney, you probably would not have money for this, either."

In an undated letter which seems to have been written very shortly prior to the expiration of the initial appeal period petitioner wrote counsel again stating that he was worried about the status of the appeal he desired to take; in that letter petitioner took the position that under his original appointment counsel was required to take the initial appellate step.

It does not appear that any further correspondence passed between petitioner and counsel during the appeal period. No appeal was ever taken. By July 9 petitioner seems to have learned of Dill's report of seeing the deceased alive on the morning of September 30 because on July 9 petitioner wrote a letter to his mother in connection with the Dill report.

Petitioner testified that during the appeal period he undertook to correspond directly with the Circuit Court officials but that the Penitentiary authorities would not permit him to do so. According to petitioner he was told that he would have to correspond with his ap-

---

3. Petitioner's punctuation and capitalization have been corrected by the Court.

pointed attorney or with persons on his approved mailing list.

As far as the alleged actions of the prison authorities are concerned, the Court thinks that it is quite probable that petitioner is telling the truth and accepts his testimony. In that connection the Court notes that the period with which it is concerned antedated the Court's decision in Talley v. Stephens, E.D.Ark., 247 F.Supp. 683. Prior to the Court's decision in *Talley* the Penitentiary personnel pursued a rather restrictive policy with regard to inmate correspondence, including correspondence addressed to the Courts; that policy has since been relaxed as required by the Talley decision. The Court thinks it quite likely that the Penitentiary authorities knowing that an attorney had been appointed to represent petitioner determined that his correspondence about his case should be confined to his attorney and that the Court officials should not be bothered with it.

After his time for appeal had expired, petitioner sought for about two years to secure post-conviction review in the sentencing court and in other Arkansas courts. He encountered a great deal of delay and difficulty in that connection and did not finally exhaust his State remedies until March of the current year when the Supreme Court of Arkansas affirmed a post-conviction order of the Conway County Circuit Court denying relief under Criminal Procedure Rule 1 of the Supreme Court of Arkansas. Gross v. State, 242 Ark. 142, 412 S.W.2d 279.

Shortly after that decision was handed down, this Court appointed Mr. George Pike, Jr., of Little Rock, a capable member of the Bar of this Court, to represent petitioner in this proceeding; Mr. Pike accepted the appointment and the Court is indebted to him for the services which he has rendered.

Naturally, Mr. Pike required some time to interview his client and to familiarize himself with the case. By agreement, the matter was set down for hearing on August 28 and was heard on that day.

In passing upon the rather narrow issue presently before the Court it should be said at the outset that petitioner's loss of his right to appeal was in legal contemplation prejudicial, although, of course, the Court does not know whether a timely appeal would have been successful. The trial errors of which petitioner complains raise questions which are not plainly insubstantial and petitioner had a right to have them considered by the Supreme Court of Arkansas, a right which he has now lost irretrievably.

Petitioner lost his right of appeal through no fault of his own. The loss was the result of the inaction of his attorney, who believed that he had no further responsibility toward petitioner, and of the inaction of the Circuit Judge after he knew that petitioner desired to appeal and after he knew that he had advised the trial attorney that he had no further obligations in the case. Those inactions were compounded by the refusal of the Penitentiary to give petitioner access to the courts of Arkansas, except through his attorney or former attorney.

As has been shown, petitioner had a right to appeal to the Supreme Court of Arkansas in forma pauperis, and he had a federal constitutional right to be represented by appellate counsel. Douglas v. People of State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811. Regardless of any supposed merit or lack of merit of an appeal from the conviction, the judicial officers knew that petitioner wanted to appeal, and the Circuit Court was under a duty to protect the basic appellate right and the right to appellate counsel. In the circumstances, the Circuit Court was not free simply to leave petitioner to his own resources or to assume that he could protect his rights. The judicial responsibility toward petitioner in connection with the desired appeal was not discharged, and the failure to discharge it amounted to a denial of due process of law. Cf. Entsminger v. State of Iowa, 386 U.S. 748, 87 S.Ct. 1402, 18 L.Ed.2d 501; Anders

v. State of California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493; Swenson v. Basler, 386 U.S. 258, 87 S.Ct. 996, 18 L.Ed.2d 33.

That denial of due process cannot be corrected save by setting aside the conviction with leave to the State to re-try petitioner within a reasonable time if it desires to do so. If petitioner is retried and convicted, his appellate rights can and must be protected adequately.

An appropriate judgment will be entered.