ROBERT VAULT *v.* RICHARD B. ADKISSON, JUDGE
OF FOURTH DIVISION PULASKI CIRCUIT COURT

CR 73-5                                    491 S.W. 2d 609

Opinion delivered March 19, 1973

*James R. Howard,* for petitioner.

*Jim Guy Tucker,* Atty. Gen., by: *Frank B. Newell,*
Asst. Atty. Gen., for respondent.

CARLETON HARRIS, Chief Justice. Petitioner, Robert
Vault, was jointly charged with two other co-defendants
with the crime of Murder in the First Degree. On Novem-
ber 6, 1972, Vault moved for a severance under the pro-
visions of Ark. Stat. Ann. § 43-1802 (Repl. 1964), such
motion being denied by the court. Thereafter, Vault filed
petition with this court seeking a Writ of Mandamus,
his contention being that the severance provided for in
the aforementioned statute is mandatory and the court
has no discretion in the matter. The pertinent parts of
the section at issue read as follows:

"When two (2) or more defendants are jointly indict-
ed for a capital offense, any defendant requiring it is
entitled to a separate trial; when indicted for a felony

less than capital, defendants may be tried jointly or separately, in the discretion of the trial court."

The filing of this petition is, of course, occasioned by the United States Supreme Court ruling in *Furman* v. *Georgia,* 408 U.S. 238, 33 L. Ed. 2d 346 (1972), in which the court decided that where a jury is permitted to decide between the punishments of life and death, the death penalty constitutes cruel and unusual punishment and the court held this interpretation applicable to the States through the Fourteenth Amendment. We recognized this holding in *Graham* v. *State,* 253 Ark. November 20, 1972, 486 S.W. 2d 678. Petitioner argues that since "capital offenses" no longer exist, the most severe penalty provided is life imprisonment, and we should construe the statute to hold that one is entitled to a severance when he is subject to the most severe penalty known to the law. To hold otherwise, says petitioner, would be to emasculate the section, which would be contrary to our long-established rules of statutory construction. It is true that we have said that where practicable, statutes will be construed so that every provision contained therein may be operative,[1] but we do not agree that such a construction in the petition before us would be practicable. Actually, we are being asked to change the wording "for a capital offense" to "for an offense punishable by life imprisonment", and such holding would constitute judicial legislation.

Petitioner cites statutes from some other States which provide for a severance where two or more defendants are jointly indicted for any felony, but such citations are of no help here, for all are legislative enactments. To the contrary, Ark. Stat. Ann. § 43-1802 is the only Arkansas statute which had made mandatory the granting of a severance. A capital crime or offense, according to Volume I, Bouvier's Law Dictionary (Third Revision) is "One for which the punishment of death is inflicted". In fact, we are not familiar with any definition of capital offense contrary to that definition. As long ago as 1850, this court stated that it is only where terms used in a statute are ambiguous that construction is permissible, and that where there is no ambiguity, there is no room for con-

---

[1]*Compton* v. *State,* 102 Ark. 213, 143 S.W. 897.

struction. *Wilson* v. *Biscoe,* et al, 11 Ark. 44. In *Berry* v. *Sale,* 184 Ark. 655, 43 S.W. 2d 225, Chief Justice Hart, speaking for the court, pointed out that where the intention of the Legislature is clear from the words used, there is no room for construction, and no excuse for adding to or changing the meaning of the language employed, and in the 1965 case of *Black* v. *Cockrill, Judge,* 239 Ark. 367, 389 S.W. 2d 881, this court stated:

> "The meaning of a statute must be determined from the natural and obvious import of the language used by the legislature without resorting to subtle and forced construction for the purpose of limiting or *extending the meaning.*" [Emphasis supplied]

The question is not what constitutes "better procedure", but simply a matter of what the statute provides and we hold that it very clearly provides a severance as a matter of right only in cases where the accused upon conviction is subject to the imposition of the death penalty.

Writ denied.

FOGLEMAN, J., concurs.

JOHN A. FOGLEMAN, Justice, concurring. I concur. We have uniformly held that whether or not an offense is capital depends upon the penalty imposed, and not upon the gravity of the offense. *Walker* v. *State,* 137 Ark. 402, 209 S.W. 86, 3 A.L.R. 968;[1] *Outler* v. *State,* 154 Ark. 598, 243 S.W. 851; *Allison* v. *State,* 204 Ark. 609, 164 S.W. 2d 442. Furthermore, we held that the former rule, that only an objection to rulings of the trial was necessary as a prerequisite to appellate review where appellant was convicted of a capital offense, had no application when one charged with murder in the first degree was sentenced to life imprisonment. *Surridge* v. *State,* 239 Ark. 581, 393 S.W. 2d 246. If an offense is not capital when life imprisonment, rather than the death penalty, has been imposed, it is

---

[1]Even the dissenting justice in *Walker* based his contention, that one convicted of murder in the first degree and sentenced to life imprisonment was not admissible to bail on appeal because he had been convicted of a capital offense, upon the premise that the death sentence *could have been imposed.* Here it cannot be.

only logical that it is not a capital offense when the death penalty cannot be imposed under any circumstances.

We have heretofore granted a writ of certiorari and directed that a circuit court admit one charged with first degree rape to bail, overruling the trial court's holding that the crime was not a bailable offense. We then relied upon *Walker* v. *State,* supra, and viewed the matter in the light of *Graham* v. *State,* 253 Ark. 462, 486 S.W. 2d 678. We also referred to *State* v. *Johnson,* 61 N.J. 351, 294 A. 2d 245. See *Jerry Wayne Baumgardner* v. *Ed Hall, Sheriff,* 253 Ark. 723.

It would certainly be inconsistent to say that the case of *Furman* v. *Georgia,* 408 U.S. 238, 92 S. Ct. 2726, 33 L. Ed. 2d 346 (1972), made former capital offenses bailable, but did not have the same effect upon our procedural statutes relating to the same offenses.