The Honorable Bill Clinton Governor of Arkansas State Capitol Little Rock, Arkansas 72201
Dear Governor Clinton:
This is in response to your request for an opinion regarding Section 3 of Act 359 of 1985 which is codified as Ark. Stat. Ann. 12-3314 (Cum Supp. 1985). You have asked the following specific questions: 1. Does Section 3.102(c) (of 12-3314) require the representative of the House of Representatives on the Pension Review Board to be a current member of the House of Representatives who is serving on the Joint Committee on Public Retirement and Social Security programs or does the language of Subsection 3.03 (of 12-3314) regarding qualification for membership mean that former representative Charles Moore is still legally serving as the representative of the House of Representatives until the expiration of his term on the Pension Review Board?
Does Act 359 of 1985 vest the Joint Interim Committee on Public Retirement and Social Security Programs with the authority to determine if a vacancy exists in the two positions on the Pension Review Board representing that Committee?
As noted in your correspondence, Subsection 3.02(c) of 12-3314 provides as follows:
 Two members of the Board shall be members of the Joint Committee on Public Retirement and Social Security Programs, one of whom shall be a member of the House of Representatives, and one of whom shall be a member of the Senate.
Subsection 3.03 states as follows:
 The qualifications for members of the Board are required only at the time of appointment.
Established rules of statutory construction dictate that legislative intent be discerned from the language employed if a statute is unambiguous on its face. Mourot v. Arkansas Board of Dispensing Opticians, 285 Ark. 128, 685 S.W.2d 502 (1985); Hot Springs School District No. 6 v. Wells, 281 Ark. 303, 663 S.W.2d 733; 744 (1984). Where the intention of the legislature is clear from the words used, there is no room for construction of the statute. Vault v. Adkisson, 254 Ark. 75, 491 S.W.2d 609 (1973).
Applying these precepts to the present case, the language of Subsection 3.103 is clear in providing that the qualifications set forth in Subsection 3.02(c) must be met "only at the time of appointment." It is my opinion that a court would go no further than Subsection 3.03 in resolving the issue posed in your first question. It must be concluded by necessary implication that there is no continuing requirement that the qualifications be met. Rather, a member of the Board who initially meets the qualifications set forth in Subsection 3.02(c) continues to serve regardless of his or her subsequent status as a member of the Joint Committee on Public Retirement and Social Security Programs or member of the House of Representatives or Senate. In response to your first question, therefore, the representative of the House need not be a "current" member of the House who is serving on the Joint Committee; and Representative Charles Moore may continue to serve until the expiration of his term on the Board.
It is my understanding that the two members serving pursuant to Subsection 3.02(c) were selected by the House and Senate members of the Joint Committee through an election process. This factual scenario does not in my opinion remove these members from the application of Subsection 3.103. A court would likely conclude that Subsection 3.03 applies to all members of the Board, and not just those appointed by the Governor under Subsection 3.02. While Subsection 3.02(c) is admittedly silent on the method of selecting these members, the term "appointment" in Subsection 3.03 logically applies to all members serving on the Board. The language of the Act offers no reasonable basis for distinguishing these members from those serving pursuant to Subsection 3.02. A court will determine ambiguity or lack thereof based upon the language employed rather than an unambiguous construction. Ragland v. Allied Telephone Co. of Arkansas, 285 Ark. 409, 687 S.W.2d 847
(1985).
You have also asked whether the Joint Interim Committee on Public Retirement and Social Security Programs has authority to determine whether a vacancy exists on the Pension Review Board. It is generally recognized that the power to appoint implies the power to determine whether a vacancy exists. C.J.S. Officers 76. Yet in this instance, while the authority to appoint the seven (7) members of the Pension Review Board referred to in Subsection 3.02(a) is clearly conferred upon the Governor, there is some question regarding the manner of selecting the other two (2) members under Subsection 3.02(c). While the General Assembly could arguably have designated the Joint Committee as the appropriate body to select these members, the Act is unclear in this regard. It has been stated, moreover, that in the absence of an express grant of power, the legislature has no authority to fill vacancies. C.J.S. Officers 77.
Since the Act does not clearly state that the Joint Committee has the power to select these members, it cannot be conclusively stated that the Committee has been vested with authority to determine whether a vacancy exists. The answer to your second question, therefore, is no.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.